Robert A. SMITH, Appellant,

v.

Edna M. SMITH, Appellee.

No. 92–CA–2519–MR.

Court of Appeals of Kentucky.

Feb. 4, 1994.

Robert A. Smith, pro se.

Stephan Charles, Manchester, for appellee.

Before McDONALD, MILLER and WILHOIT, JJ.

## OPINION

McDONALD, Judge.

Robert A. Smith has appealed from the judgment of the Clay Circuit Court which denied his request for visitation with his thirteen-year-old daughter.

Smith is an inmate at the Eastern Kentucky Correctional Complex in West Liberty, Kentucky, serving a life sentence for murder, robbery and kidnapping. He has been continuously imprisoned since November, 1983, two months after his second marriage to the appellee, Edna Smith. The parties' child, Amanda, was born in November 1980.

According to the record, and as admitted by the appellee in her brief, Edna took Amanda to visit Robert in prison for several years after his incarceration. In 1989 Robert filed for dissolution of the parties' marriage, and in November of that year, a decree of dissolution was entered which provided in part:

The support and visitation concerning the children[1] are deferred as the Petitioner has no property or income and is a prisoner.

Robert alleges that the last time he saw his daughter was in November 1989, and that after the decree was entered, Edna stopped bringing Amanda to visit. In June 1991, Robert, pro se, moved the trial court to allow him to have visitation with Amanda on week-

---

1. The appellee stated in her verified response to the petition for dissolution that, in addition to Amanda, Robert is the father of her two younger children. Edna did not enlighten the court on how Robert accomplished fathering these two children, born December 29, 1984, and March 3, 1989, 13 months and 6 years, respectively, after his incarceration. Robert denied being the biological father of the two and offered to submit to blood testing. However, at Edna's request, paternity of these two children was not determined in this action.

ends and holidays. He stated his parents would be responsible for transporting the child to see him. On July 1, 1991, the trial court entered an order requiring Robert to file a "detailed plan" of the proposed visitation. The plan was promptly filed, along with a request for a hearing, if necessary. When no decision was forthcoming, Robert renewed his motion in January 1992, and again in July 1992. Finally, in September 1992, the trial court entered the following order from which this appeal has been taken:

> On Petitioner's pro se motion for visitation with one of his children, the Court has examined the record including the Petitioner's motions and heard argument of Respondent's Counsel finds that it is inappropriate at this point to consider issues involving the parties' children because of the Petitioner's incarceration, all issues concerning the children having been previously reserved for consideration and decision upon Petitioner's release;
>
> IT IS THEREFORE ORDERED that the motion be denied.

Initially we note that Edna filed no response of record to the motion for visitation. Although she had notice of both the motion and the court's order requesting a plan from Robert, she filed no response of any kind nor made any objection whatsoever to Smith's request for visitation. As no hearing was conducted, we are perplexed as to when the court had benefit of Edna's counsel's arguments in opposition to the motion and what the substance of those ex parte communications were. The order was not distributed to Edna's counsel causing further speculation of the extent of his participation in this matter. Serious due-process considerations are patent on the face of the order; however, the resolution of this appeal is not predicated on those grounds but on the violation of Robert's natural and statutory rights to visit with his child.

■ In this jurisdiction the non-custodial parent cannot be denied reasonable visitation with his or her child[ren] unless there has been a finding that visitation will seriously endanger the child. KRS 403.320(1);[2] *Hornback v. Hornback,* Ky.App., 636 S.W.2d 24 (1982). The non-custodial parent is not required to show visitation is in the child's best interest and the appellee's argument that Robert failed in his burden of proof is specious. Clearly the statute has created the presumption that visitation is in the child's best interest for the obvious reason that a child needs and deserves the affection and companionship of *both* its parents. The burden of proving that visitation would harm the child is on the one who would deny visitation.

Also under our statutory scheme, one may not be deprived of the right to visit his child without a hearing. For this reason Edna's reliance on the *Hornback* decision is entirely misplaced. In *Hornback* the non-custodial parent had "severe mental problems." A finding that the children would be seriously endangered was specifically made in the initial decree of dissolution after an evidentiary hearing. The decree also mandated that the parent would not be allowed to exercise visitation until she was certified as "mentally and emotionally stable." *Id.,* at 24.

In the instant case there has never been an evidentiary hearing, much less a finding, that Amanda would be endangered in any manner by visiting her father in prison. The issue of visitation has never been addressed on the merits and the decree of dissolution merely reserved the issue for later adjudication.

■ This brings us to Edna's further contention, with which the trial court apparently agreed, that Robert's failure to appeal the decree containing the reservation prevents the issue from being considered indefinitely or at least until his release from prison. This argument is absurd. As stated, the decree did not contain a final adjudication of Robert's rights to visitation. Any attempt to appeal from that order would have been dismissed for lack of finality. Furthermore, the decree did not specifically abate the issues of paternity, support and visitation *until* Robert's release from prison, but *because* of Rob-

---

**2.** KRS 403.320(1) provides in part: "A parent not granted custody of the child is entitled to reasonable visitation rights unless the court finds, after a hearing, that visitation would endanger seriously the child's physical, mental, moral, or emotional health...."

ert's status as an inmate. These issues were deferred primarily because of Edna's dubious claim that Robert fathered the two younger children born during the marriage and the evidentiary obstacles for Robert in defending this claim. However, there was no issue raised concerning Amanda's paternity and, until the decree was entered, Robert was exercising visitation. There is nothing in the decree of dissolution which would prevent Robert from seeking resolution of these issues at any time. Moreover, interpreting the decree as barring any attempt to seek visitation until Robert secures his freedom would constitute total deprivation of his rights to visitation, as Amanda will be emancipated before Robert becomes eligible for parole. In any event, even had the decree addressed the merits of the issue and had Robert been denied visitation and had Robert failed to appeal, the judgment could be modified to allow visitation if it was in Amanda's best interest. KRS 403.320(3).[3] Thus Edna's arguments that the issue has been waived, or is barred by the doctrine of res judicata, or that Robert is estopped by his failure to seek visitation for a year and a half after Amanda's last visit are all frivolous under any possible interpretation of the applicable statute.

■ With these considerations in mind, we will address the sole legal basis for the trial court's denial of Robert's motion for visitation, i.e., his incarceration. The fact of his incarceration alone does not, in our opinion, justify denial of Robert's right to visitation as a matter of law. Our Supreme Court has not specifically addressed this issue but many other jurisdictions have. We find ourselves in complete agreement with the sentiments of our sister state, Missouri, expressed in *M.L.B. v. W.R.B.*, 457 S.W.2d 465, 466–467 (Mo.App.1970):

> A parent's right of access to or visitation with his minor children is a natural right, sometimes regarded as sacred ... and always respected as exceedingly important....

> [I]t has been held (soundly, we think) that neither past delinquency ... nor former conviction and confinement ... nor present incarceration necessarily requires denial of the errant parent's right of access to his children.

> Although there was no such contention in the trial court, the mother here asserts that '(the father) has rendered himself unfit by virtue of his being convicted and sentenced to imprisonment for a crime involving moral turpitude.' This prompts the observation that '(n)otwithstanding defendant's present incarceration, as the result of a criminal conviction, the law does not preclude repentance, reformation, and forgiveness.' (Citations omitted).

Regardless of the heinous nature of Robert's crimes, his status as an inmate in a penal institution alone does not make visitation with his child inappropriate. Had it been shown that visitation would not be appropriate, that is, had Edna proven that Amanda would suffer serious consequences, the statute would have allowed the trial court to deny visitation. However, in no event may a non-custodial parent, even one who is incarcerated, be deprived of visitation because of the mere whim or lack of cooperation of the custodian.

Accordingly, the judgment of the Clay Circuit Court is reversed and the matter is remanded for entry of an order establishing a schedule of visitation commensurate with Robert's circumstances.

All concur.

---

3. This statute reads:
   "(3) The court may modify an order granting or denying visitation rights whenever modification would serve the best interests of the child; but the court shall not restrict a parent's visitation rights unless it finds that the visitation would endanger seriously the child's physical, mental, moral, or emotional health."