# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2019-CP-01152-SCT

## CONSOLIDATED WITH

## NO. 2017-CP-00828-SCT

*MICHAEL T. GERTY*

*v.*

*JOESIE R. GERTY*

| | |
|---|---|
| DATE OF JUDGMENT: | 05/03/2019 |
| TRIAL JUDGE: | HON. JENNIFER T. SCHLOEGEL |
| TRIAL COURT ATTORNEYS: | THOMAS WRIGHT TEEL |
| | JIM HOOD |
| | JUSTIN L. MATHENY |
| | ANNA WARD SUKMANN |
| | M. CHANNING POWELL |
| COURT FROM WHICH APPEALED: | HARRISON COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | MICHAEL T. GERTY (PRO SE) |
| ATTORNEY FOR APPELLEE: | M. CHANNING POWELL |
| NATURE OF THE CASE: | CIVIL - DOMESTIC RELATIONS |
| DISPOSITION: | AFFIRMED IN PART AND REMANDED IN PART - 06/04/2020 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE RANDOLPH, C.J., COLEMAN AND CHAMBERLIN, JJ.**

**RANDOLPH, CHIEF JUSTICE, FOR THE COURT:**

¶1.     This matter is before the Court, after having been remanded for the reasons set forth in the Court's prior decision in ***Gerty v. Gerty***, 265 So. 3d 121 (Miss. 2018) (***Gerty I***). On remand, the chancellor granted Michael Gerty a divorce from Joesie Gerty on the ground of adultery. The chancellor revisited her prior holdings regarding visitation, division of martial

assets, and alimony. Finding error only regarding the number of months the parties were married,[1] we affirm as to all other issues and remand for entry of a final judgment consistent with this opinion.

## PROCEDURAL HISTORY

¶2.     Upon remand of *Gerty I*, the chancellor utilized the existing record, consisting of numerous pleadings, motions, responses, exhibits, and five days of trial testimony, and issued an amended final judgment of divorce at issue today. The chancellor granted Michael a divorce on the grounds of adultery. The chancellor awarded joint legal custody of the minor child to both parties but with physical custody granted to Joesie. Michael was awarded visitation every first and third weekend, holiday visitation, and one month in the summer.

¶3.     The chancellor found that the court was not limited by the parties' 2013 property-settlement agreement (PSA). The chancellor found that the marital assets consisted of the Gulfport home,[2] the Pass Christian home, the marital portion of Michael's military retirement, and Joesie's retirement. Each party was granted one-half of the marital assets. Based on the factors enumerated in *Ferguson v. Ferguson*, 639 So. 2d 921 (Miss. 1994), the

---

[1] The parties were married on May 7, 2005. Per the record before the chancellor, the chancellor selected the date of the first day of trial, December 7, 2015, as the end date of the marriage, resulting in 127 months of marriage, not 204 as reflected in the amended judgment before us. Whether this was a scrivener's error or a miscalculation, we know not. We remand with instructions for the sole purpose of the chancellor to correct the numerical error regarding the months married to 127. Consistent with her findings, the chancellor is instructed to amend the length of marriage in the May 3, 2019 final judgment to 127 months.

[2] The chancellor took judicial notice of the foreclosure of this property.

2

parties' monthly incomes, and the division of marital assets, the chancellor relieved Michael of paying alimony.

¶4.    Finding that the chancellor properly awarded Michael a divorce on the ground of adultery and that the chancellor revisited her prior awards of visitation, division of marital assets, and alimony, we affirm the chancellor's decision, save for the erroneous length of the marriage which shall be corrected on remand.

## ISSUES

I.    **Whether the chancery court was manifestly wrong, employed the wrong legal standard, or abused its power when it declared that it would no longer abide by the parties' property settlement agreement.**

II.    **Whether the chancery court was manifestly wrong, applied the wrong legal standard, or erred by awarding Joesie a percentage of Michael's military retirement pay.**

III.    **Whether the chancery court was manifestly wrong for significantly limiting Michael's summer visitation.**

IV.    **Whether the chancery court was manifestly wrong or abused its power by allowing a clear and unmistakable bias to determine its child-custody decision.**

## ANALYSIS

¶5.    The standard of review in domestic-relations cases is well-settled. Absent manifest error, this Court will uphold a chancellor's decision. ***Sproles v. Sproles***, 782 So. 2d 742, 746 (Miss. 2001).

I.    **Whether the chancery court was manifestly wrong, employed the wrong legal standard, or abused its power when it declared that it would no longer abide by the parties' property settlement agreement.**

¶6. Because Michael fails to cite any case law, statutory authority, or any authority to show how the chancellor erred in this finding, we find that Michael is procedurally barred from raising this issue on appeal. *See Touchstone v. Touchstone*, 682 So. 2d 374, 380 (Miss. 1996); *Ellis v. Ellis*, 651 So. 2d 1068, 1073 (Miss. 1995) (issue procedurally barred on appeal because appellant failed to cite authority).

¶7. Notwithstanding the procedural bar, this issue is without merit. In *Gerty I*, we specifically found that the parties' PSA included the following language:

> It is agreed and understood that this Agreement is not contingent upon a divorce [sic] being granted. However, if the parties are granted a divorce on any grounds, the parties agree that this Agreement shall be made a part of the Judgment and that such Judgment shall not conflict with the terms of the Agreement [sic] *except to the extent disapproved by the Court* [sic] the [sic] parties agree that each mutually submits to the personal jurisdiction of the Chancery Court of Harrison County, State of Mississippi, so that said *Court has the power to decide any and all matters and questions concerning the dissolution of the parties' marriage . . . and the division of the parties' property and debts.*

*Gerty I*, 265 So. 3d at 125 (emphasis added). Michael argues that the chancery court's opinion regarding the applicability, *vel non*, of the PSA was not supported by the record, applied a wrong legal standard, and was an abuse of power. But the language of the PSA, agreed to by the parties, clearly granted the court the authority to decide any matters differently than provided by the PSA. Thus, we affirm as to this issue.

> **II.     Whether the chancery court was manifestly wrong, applied the wrong legal standard, or erred by awarding Joesie a percentage of Michael's military retirement pay.**

4

¶8.     The chancellor completed a *Ferguson* analysis and made a finding that Joesie was entitled to a portion of Michael's military retirement. The chancellor found that the marital portion of the Michael's retirement began on May 7, 2005, and ended on December 7, 2015.

¶9.     Michael argues that Joesie is not entitled to his military retirement because the parties were not married ten years. *See* Uniform Services Former Spouses Protection Act (USFSPA), 10 U.S.C. § 1408 (2012). The chancellor found that the parties' were married on May 7, 2005, and utilized the first date of trial, December 7, 2015, as the end date of the marriage. The only error committed by the chancellor was the miscalculation of the number of months the parties were married. Utilizing her findings of the start and end dates of the marriage, the parties were married ten years and seven months, a total of 127 months. On remand, the chancellor is instructed to amend her May 3, 2019 final judgment to reflect that the parties were married for 127 months.

¶10.    Michael also contends that the chancellor's decision was not consistent with the *Ferguson* factors. The chancellor found that the parties' marital assets consisted of two houses, one of which was in foreclosure, and each party's retirement. The chancellor analyzed each *Ferguson* factor and equitably divided the martial assets between Michael and Joesie. The chancellor made the following finding as to Michael's military retirement, albeit with an erroneous calculation as to the length of marriage:

> Military retirement is not a traditional asset to be divided among the parties; rather it acts as a stream of income divided as a percentage. This percentage is derived by dividing the number of married military service months by the total number of creditable service months. In keeping with its previous calculation from the divorce, Michael thus far has served a total of 228 months (19 years). The Gertys were married for *204* [sic] months[] of Michael's active

5

military service, leaving a portion of his military retirement as separate property. Because Michael has not yet retired, DFAS[3] will arrive at the final percentage to be distributed with *204* [sic] months as the numerator over Michael's total months of creditable service as the denominator at the time of Michael's future retirement.

. . . .

The Court recognizes that this [] still results in a deficit for both parties; however, the addition of Michael's military retirement should alleviate this deficit to a large degree for Joesie. Michael's deficit is potentially lower than reflected here due to the foreclosure sale. Michael nonetheless has the greater deficit. *Unfortunately, the parties' financial situation leaves the Court with few options whereby they are both solvent and can therefore only plan for some degree of stabilization upon Michael's retirement.*

The Court also recognizes that the parties' financial positions have likely changed since the entry of its original divorce decree and that new evidence may be presented and considered upon proper post-judgment motion[4] absent a valid objection.

(Emphasis added.)

¶11.    Although Michael claims that the chancellor's ***Ferguson*** analysis and subsequent judgment contained many errors and omissions, we find no error by the chancellor in her division of the marital assets or her analysis of the ***Ferguson*** factors. We do find that the chancellor erred by inserting in her final judgment that the parties were married for 204 months (or a total of seventeen years). On remand, the chancellor is instructed to correct the Final Judgment to reflect that the parties were married 127 months. Her judgment as to the division of marital assets and her analysis of the ***Ferguson*** factors is affirmed.

---

[3] Defense Finance and Accounting Services (DFAS) provides payment services to the Department of Defense.

[4] The docket does not indicate that any post-judgment motions were filed by either party.

### III. Whether the chancery court was manifestly wrong for significantly limiting Michael's summer visitation.

¶12. Initially, the PSA allowed Michael two months visitation in the summer. Under this Court's remand instructions, the chancellor reconsidered visitation and found that the parties' initial visitation agreement "was not sufficient to address visitation of a child of such a young age . . . ."

¶13. Michael argues that a "child's natural parents 'are infinitely more capable of devising a workable custody plan than are the judges of this state.'" (quoting *Cheek v. Ricker*, 431 So. 2d 1139, 1142 (Miss. 1983)). Michael contends that nothing in the chancellor's *Albright*[5] analysis supports limiting the minor child's time with his father. Although neither Joesie nor Michael requested a modification of the visitation arrangement in the PSA, the chancellor was instructed to revisit visitation, and she has wide discretion in her decision.

> Visitation and restrictions placed upon it are within the discretion of the chancery court. *Newsom v. Newsom*, 557 So. 2d 511, 517 (Miss. 1990); *Clark v. Myrick*, 523 So. 2d 79, 83 (Miss. 1988); *Cheek v. Ricker*, 431 So. 2d 1139, 1146 (Miss. 1983). Where a chancellor has made factual findings on the matter of visitation, this Court will not disturb those findings unless [the chancellor's] findings are not supported by substantial credible evidence, [the chancellor] has committed manifest error, or [the chancellor] has applied the erroneous legal standard. *Bredemeier v. Jackson*, 689 So. 2d 770, 775 (Miss. 1997). However, while being attentive to the rights of a non-custodial parent, [the chancellor] must keep the best interest of the child as [the] **paramount concern**. *Harrington v. Harrington*, 648 So. 2d 543, 545 (Miss. 1994).

*Christian v. Wheat*, 876 So. 2d 341, 345 (Miss. 2004). In reviewing a chancellor's factual determinations, we may not "arbitrarily substitute our judgment for that of the chancellor who is in the best position to evaluate all factors relating to the best interest of the child."

---

[5] *Albright v. Albright*, 437 So. 2d 1003 (Miss. 1983).

*Tucker v. Tucker*, 453 So. 2d 1294, 1296 (Miss. 1984) (internal quotation mark omitted) (quoting *Yates v. Yates*, 284 So. 2d 46, 47 (Miss. 1973)).

¶14. The chancellor found that it was not in the best interest of a child the minor child's age to be apart from the custodial parent for two months. Her finding including the following language:

> Following the parties divorce trial, the Court conducted a second, more comprehensive *Albright* analysis. As a result of that analysis, with the implicit understanding that roughly three years had passed since the parties' initial agreement, that the child was then newly enrolled in elementary school, and that the parties' agreement was no longer workable *or* in the best interest of the child, the Court entered a visitation schedule which differed somewhat from the temporary order. The Court's *Albright* analysis *was* and *is* the basis for its findings and rulings on the matter of visitation. To clarify its position, the Court finds it is not in the best interest of a young child to spend *two consecutive months* away from his primary custodial parent. For that reason, the Court did not grant Michael a two-month summer visitation period . . . .

Michael was granted visitation every first and third weekend, visitation during the holidays, and one month during the summer. The chancellor further found

> The Court hereby slightly alters its summer visitation award by adding [that] Michael may be awarded the entire months of June and July for summer visitation upon the child's attainment of age twelve (12) years; *provided* that the child is in agreement. If the child's desires are contrary to the father's, the visitation schedule shall remain as previously awarded, i.e., limited to either the month of June or the month of July. Additionally, the parties may mutually agree to alter the visitation schedule at any time they wish to do so.

¶15. The chancellor's findings were supported by substantial evidence and were not manifestly in error. Thus, we affirm the chancellor as to this issue.

> **IV. Whether the chancery court was manifestly wrong or abused its power by allowing a clear and unmistakable bias to determine its child-custody decision.**

¶16. Throughout his brief, Michael makes references to chancellor's bias against him. His fourth assignment of error is duplicative of his prior arguments that the chancellor "ignored evidence, ignored testimony, ignored the law, invented new legal standards, and changed the law in order to reach a conclusion desired by the chancery court." But Michael added to his argument that he "challenge[s] this court to review and comment on the Chancery Court's *Albright* analysis."

¶17. This Court reviewed the chancellor's ***Albright*** analysis as to custody of the minor child. We affirmed the chancellor's judgment as to custody and child support. ***Gerty I***, 265 So. 3d at 124. Because this issue was correctly decided in ***Gerty I***, this Court gave no instruction to the chancellor to review this issue further on remand.

**CONCLUSION**

¶18. After a careful review and analysis during the trial and on remand of an unusual set of circumstances, the chancellor considered the best interests of the child, and her findings were neither manifestly wrong nor clearly erroneous. The chancellor did not apply an erroneous legal standard, which would permit this Court to reverse. *See* ***Heiter v. Heiter***, 192 So. 3d 992, 994 (Miss. 2016). But this matter is remanded with instruction to the chancellor to correct the May 3, 2019 final judgment to reflect that the parties were married 127 months. We affirm all other aspects of the chancellor's final judgment of divorce on remand.

¶19. **AFFIRMED IN PART AND REMANDED IN PART.**

**KITCHENS AND KING, P.JJ., COLEMAN, MAXWELL, BEAM, CHAMBERLIN, ISHEE AND GRIFFIS, JJ., CONCUR.**