RENDERED: SEPTEMBER 30, 2022; 10:00 A.M.
TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2021-CA-1005-MR

ROBERT ANDREW SHARP[1]                  APPELLANT

APPEAL FROM WARREN FAMILY COURT
v.      HONORABLE CATHERINE R. HOLDERFIELD, JUDGE
ACTION NO. 14-CI-00479

ROBBIN NELSON; HEATHER ANNE
SHARP; AND WARREN COUNTY
PUBLIC SCHOOLS                     APPELLEES

OPINION
AFFIRMING

** ** ** ** **

BEFORE: CALDWELL, GOODWINE, AND JONES, JUDGES.

JONES, JUDGE: Robert Andrew Sharp appeals from an order of the Warren

Family Court that clarified language contained in a previous order entered on

February 20, 2019, upon motion of non-party Warren County Public Schools

("WCPS"). The family court clarified that the language contained in the February

---

[1] We note that the notice of appeal identifies Appellant as Robert Andrew Sharp; however, he is consistently identified throughout the record before us as Robert Andrew Sharp, Jr. We omit "Jr." consistent with the notice of appeal.

20, 2019 order meant that Robert could not receive any educational records from WCPS regarding his two children with the exception of report cards. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

This is the sixth action before this Court filed by either Robert; his mother, Robbin Nelson (paternal grandmother to the children); or Jerry Wells (Robbin's husband and a non-party to the underlying action).[2] The extensive factual and procedural history of this action was detailed by this Court in *Nelson v. Sharp*, No. 2019-CA-000441-ME, 2020 WL 1969918 (Ky. App. Apr. 24, 2020). Briefly, Heather and Robert were going through divorce proceedings beginning in 2014. At that time, Robbin came before the family court after filing a motion to be named *de facto* custodian for Heather and Robert's two children. Neither Heather nor Robert was present at the hearing and, although the family court granted Robbin's motion, it later made a finding that Robbin's testimony at the hearing was fraudulent.

A custody battle ensued, including an attempt by Robert, Robbin, and Robbin's husband, Jerry Wells, to terminate Heather's parental rights by filing an action in Tennessee so that Robbin and Jerry could adopt the children. Robert consented to the adoption of his children by Robbin and Jerry. However, the

---

[2] *See also* Nos. 2017-CA-0427-ME; 2017-CA-0528-OA; 2018-CA-1467-OA; 2018-CA-1535-MR; and 2019-CA-0441-ME.

family court in Kentucky ultimately retained jurisdiction. Robbin continued to have custody of the children, but Heather and Robert were granted visitation by the family court. In September 2016, Heather filed a motion to modify custody. Due to constant delay tactics by Robbin, Heather's motion was not heard until October 12, 2018; however, the family court granted temporary sole custody of the children to Heather in March 2017. The family court also entered an order in November 2017, temporarily ceasing all contact between Robbin and the children. We note that even after Robbin was ordered to have no contact with the children, she continued to place calls to the Cabinet for Health and Family Services ("CHFS") alleging abuse of the children by Heather. All referrals were unsubstantiated.

The family court ultimately awarded sole custody of the children to Heather and ordered ongoing no contact between Robbin and the children. In analyzing the motivation of the parties, the family court found that

> [t]he motivations of Robert and [Robbin] are the same. Their motivation is not based on the best interest of the minor children. It is clear to the Court that they do not seek a return of the children as a result of their best interest, but they seek return of the children in order to somehow punish Heather. This is evident, in part, by the numerous administrative complaints filed against Heather and those seeking to provide assistance to her. The Court finds Robert and [Robbin] would rather the children be placed with strangers in foster care than with Heather. The Court is very disturbed by their thinking and their actions.

*Nelson*, 2020 WL 1969918, at \*9.  Nevertheless, the family court permitted Robert continued visitation with the children.  This Court affirmed the family court.[3]

While the case was on appeal in No. 2019-CA-0441-ME, the acrimony between the parties continued.  On January 31, 2019, Robert appeared in person at the children's school, attempting to obtain information regarding an eye examination performed on one of the children.  The school declined to give Robert any paperwork, but Robert later testified the school nurse informed him of the results of the eye examination.  The same day, Robbin called the school, alleging physical abuse of the children by Heather.  The school, in turn, called CHFS to report the substance of Robbin's telephone call.[4]  On February 1, 2019, Robbin called CHFS to report medical neglect of the children by Heather.  The same day, Heather filed an emergency motion to cease Robert's visitation, alleging Robert was using his visitations with the children to gather information to use against Heather, contrary to prior orders of the family court.

The family court conducted a hearing on February 5, 2019.  Janet Glover, investigative worker for CHFS, testified that, based on the information she had at the time, she anticipated the most recent referrals would be unsubstantiated.

---

[3]  We note that, although Robert was named as an appellee in No. 2019-CA-0441-ME, he did not file a brief.

[4]  At the hearing on February 5, 2019, the family court ordered the CHFS worker to reveal the referral sources for the telephone calls made regarding the children on January 31, 2019, and February 1, 2019.

Ms. Glover also testified that the most recent referral of February 1, 2019, was the fifth since 2017.[5] Robert also testified. He admitted to having discussions with Robbin regarding things the children told him during his visitation, and also shared the results of the eye examination with her. On February 20, 2019, the family court entered an order stating, in relevant part, that "Robert is not to be involved in decision making regarding the children or to gather information concerning the children." Robert filed a motion to alter, amend, or vacate the order. The family court granted his motion in part, and entered an order on March 8, 2019, that altered or amended specific portions of the February 20, 2019 order. However, the portion ordering Robert not to gather information about the children was not altered or amended in any way.

On or about February 16, 2021, Robert sent a letter to Warren County Public Schools, demanding information for both children. The letter stated, in relevant part,

> [b]ased on my concerns I am requesting a copy of all records and documents on my children as named above, as I am allowed to do under The Family Educational Rights and Privacy Act (FERPA). This request is specifically for *all* school records and associated documents that pertain to my children including but not limited to the report of the testing for the audio processing disorder which you should have on

_____

[5] Ms. Glover testified that, although she had documentation with her for only four referrals, she was sure five referrals had been made to CHFS since 2017, based on a form she initially saw in preparation for her testimony.

file, ADHD testing for my son including teacher notes or psych testing/evaluation that would lead to that diagnosis, current and past curriculums, what if any accommodations are being provided for either of my children, names of their teachers, class size, test[] scores, past and present grades, enrollment forms, medication forms, emergency contact forms, approved individual forms for pick up drop off, attendance logs, internal and external communications that pertain to my children, documentation by teachers, school nurses, social worker, psychologist, psychiatrist, any licensed professional regarding testing/treatment/recommendations, contact with any attorney, judge, law enforcement or child protective services, and any communication from any and all sources related to my children which are maintained in any form hardcopy, electronic, or otherwise, and the log-in information whereby I can access by [sic] children's school activity and progress.

Rather than provide the requested information to Robert, WCPS filed a motion with the family court as a non-party on March 16, 2021. The motion requested clarification of the family court's February 20, 2019 order. Specifically, it requested the family court clarify whether the language that read "Robert [Sharp] is not to be involved in decision making regarding the children or to gather information concerning the children" meant that he shall not obtain copies of the children's education records he was seeking. WCPS did not take a position on the matter. Robert filed a response, arguing that the subject matter of the February 20, 2019 order had "nothing to do with the subject matter of the pending motion by the non-party [WCPS]." He asserted the family court never entered an order

restricting him from obtaining the children's school records and that he was entitled to the records under FERPA.

The family court conducted a telephonic hearing on April 20, 2021. Robert argued that KRS[6] 403.330 did not prevent him from obtaining the school records and that no prior order of the family court prevented him from obtaining same. He also argued the order entered on March 8, 2019, in response to his motion to alter, amend, or vacate the February 20, 2019 order, had no prohibitions. Heather argued the February 20, 2019 order came about because Robert attempted to obtain medical records from the school which, in turn, resulted in Robbin making more referrals to CHFS. Heather asserted any attempt by Robert to obtain records of any sort was not in good faith. At the conclusion of the hearing, the family court addressed its ongoing concern that Robert gathers information to share with Robbin, resulting in more referrals to CHFS and ongoing litigation to keep Heather in court to "basically starve her out financially."

On May 18, 2021, the family court entered an order prohibiting Robert from acquiring any school records of the children with the exception of report cards. Robert filed a motion to alter, amend, or vacate the order or to make specific findings of fact to support entry of the order. Robert argued no evidentiary hearing occurred in response to WCPS's motion, and therefore, the record was

---

[6] Kentucky Revised Statute.

devoid of any evidence to support the family court's order. The family court denied Robert's order to alter, amend, or vacate, but did make additional findings including, in relevant part, that the full evidentiary hearing Robert insisted was lacking occurred on February 5, 2019. The family court again referenced Robert's repeated attempts to gather information and pass it along to Robbin for ongoing referrals to CHFS and litigation as a means to harass Heather. This appeal followed.

## II. STANDARD OF REVIEW

"As an appellate court, we are required to give deference to the trial court's interpretation of its own orders. Unless that interpretation is manifestly unreasonable, we will affirm." *VP Louisville, LLC v. NBH Bank, N.A.*, 578 S.W.3d 753, 757 (Ky. App. 2019) (citation omitted).

## III. ANALYSIS

Robert argues the family court erred in interpreting its February 20, 2019 order as prohibiting him from obtaining the children's school records from WCPS. He also argues that the family court erred in finding that Robert continually reported Heather to CHFS as a means of harassment. We disagree.

Robert's first argument centers primarily on the lack of an evidentiary hearing in response to WCPS's motion. We agree with the family court and Heather that the evidentiary hearing occurred on February 5, 2019. The family

-8-

court then entered an order on February 20, 2019, and a second order on March 8, 2019, that altered or amended certain portions of the February 20, 2019 order, but left unaltered the portion that stated, "Robert is not to be involved in decision making regarding the children or to gather information concerning the children." Neither of those orders were appealed. In seeking clarification of the February 20, 2019 order, WCPS in no way took a position, nor did it put forth any evidence beyond the letter received from Robert. The orders entered by the family court on May 18, 2021, and July 30, 2021, in no way altered the February 20, 2019 order. Considering the order was entered as a result of Robert's attempts in 2019 to obtain records from the children's school, it is not manifestly unreasonable for the family court to interpret its order as preventing Robert from gathering information from the children's school.[7]

Robert also argues KRS 403.330 does not prevent him from accessing school records. The statute states, in relevant part,

> (1) Except as otherwise agreed by the parties in writing at the time of the custody decree, the custodian may determine the child's upbringing, including his education, health care, and religious training, unless the court after hearing, finds, upon motion by the noncustodial parent, that in the absence of a specific

---

[7] As an extension of his first argument, Robert also contends that, by limiting his access to the children's school records, the family court's order is "tantamount to modifying his visitation rights without a[n] evidentiary hearing[.]" This argument simply has no basis in fact or law. The cases cited by Robert, *Kulas v. Kulas*, 898 S.W.2d 529 (Ky. App. 1995), and *Smith v. Smith*, 869 S.W.2d 55 (Ky. App. 1994), are wholly unrelated to the issues presented in this appeal. We decline to further address this portion of Robert's argument.

limitation of the custodian's authority, the child's physical health would be endangered or his emotional development significantly impaired.

Robert points to a 1990 opinion of the Kentucky Attorney General in support of his argument. Robert is correct that the opinion generally indicates KRS 403.330 does not ban a noncustodial parent from inspecting educational records. However, the opinion also states

> there is no language specifically extinguishing the general right of a noncustodial parent to review a child's educational records. Absent express statutory language banning a noncustodial parent from reviewing a child's educational records, or an agreement **or a court order establishing such ban**, we believe a noncustodial parent has the same entitlement as a custodial parent to review a child's educational records.

1988-1991 Ky. Op. Atty. Gen 2-370, Ky. OAG 90-52, 1990 WL 512598, at *1 (Jul. 23, 1990) (emphasis added).[8]

"While we are not bound by opinions of the Attorney General; this court can, however, afford them great weight." *Louisville Metro Dep't of Corrections v. King*, 258 S.W.3d 419, 421-22 (Ky. App. 2007) (citation omitted).

---

[8] Notably, Robert does not argue the applicability of 34 Code of Federal Regulations (C.F.R.) § 99.4, which is part of FERPA and cited by WCPS, and states

> [a]n educational agency or institution shall give full rights under the Act to either parent, unless the agency or institution has been provided with evidence that there is a court order, State statute, or legally binding document relating to such matters as divorce, separation, or custody that specifically revokes these rights.

In this instance, we agree with the Attorney General's opinion that KRS 403.330 does not restrict a noncustodial parent's access to school records *in the absence of a court order stating otherwise*. Here, the family court's order provided Robert was not to gather information about the children, including school records. Accordingly, we discern no error.[9]

Finally, Robert argues the family court erred when it found, in its July 30, 2021 order (in reference to the February 20, 2019 order) that, "[i]t had become clear to the Court that [Robert] and [Robbin] were continually reporting [Heather] to [CHFS] without cause and as a means of harassing [Heather]." We disagree with Robert. The record before us reveals that Robert has been continually acting in concert with Robbin to affect the custody proceedings at every turn and to provide information to Robbin so that she could make referrals to CHFS. Even after Robbin was ordered to have no contact with the children, the referrals to CHFS continued. As previously stated, at the hearing on February 5, 2019, Robert testified and admitted to having discussions with Robbin regarding things the

---

[9] We agree with the family court that Kentucky courts have not yet interpreted 34 C.F.R. § 99.4 and/or KRS 403.330 to address *when* a court may restrict a noncustodial parent's rights to inspect educational records. Robert argues the family court mistakenly relied on caselaw from New York in support of its order, specifically *Page v. Rotterdam-Mohonasen Cent. Sch. Dist.*, 109 Misc. 2d 1049, 1051, 441 N.Y.S.2d 323 (N.Y. Sup. Ct. 1981). However, the issue before this Court is not *when* a court may restrict a noncustodial parent's rights, but rather, if the language contained in the February 20, 2019 order, as interpreted by the orders entered on May 18, 2021, and July 30, 2021, in fact restricted Robert's right to inspect educational records. We therefore decline to further address Robert's argument that the citation to New York law was in error.

children told him during his visitation, and also shared the results of the eye examination with her. Despite this testimony, he also stated he was unsure how Robbin received the information that resulted in the two most recent referrals to CHFS. It was not unreasonable for the family court to conclude that Robbin acquired the information from Robert. Nor would it be unreasonable to conclude that Robert knew precisely what Robbin would do with said information. At the conclusion of the hearing, the family court asked Robert no less than four times what it could do to prevent him from gathering and reporting information regarding the children to Robbin. Robert was evasive, but eventually stated that he did not know. We agree with the family court and a prior panel of this Court that, based on their conduct, it appears that Robert and Robbin would prefer the children be in foster care with strangers than with their mother.[10] Despite the no-contact order between Robbin and the children, Robert has admittedly continued to provide her with information that has resulted in ongoing litigation and more referrals to CHFS. We empathize with the family court's obvious frustration. We discern no error.

## IV. CONCLUSION

For the foregoing reasons, we affirm the Warren Family Court.

---

[10] *See Nelson*, 2020 WL 1969918, at *10.

-12-

ALL CONCUR.


BRIEFS FOR APPELLANT:

Kenneth A. Meredith II
Bowling Green, Kentucky

BRIEF FOR APPELLEE HEATHER
ANNE SHARP:

Casey A. Hixson
Bowling Green, Kentucky