RENDERED: APRIL 10, 2026; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2025-CA-0776-MR

CHRISTOPHER HIGGINS                                   APPELLANT


APPEAL FROM BRECKINRIDGE CIRCUIT COURT
v.                 HONORABLE BRUCE T. BUTLER, JUDGE
ACTION NO. 19-CI-00048


JESSICA CLARK                                         APPELLEE


OPINION
AFFIRMING

** ** ** ** **

BEFORE: EASTON, ECKERLE, AND MᴄNEILL, JUDGES.

EASTON, JUDGE: Christopher Higgins (Father) appeals from the Breckinridge Circuit Court's order which indefinitely suspended his parenting time with his minor child (Child). The circuit court order adopted the report of the Domestic Relations Commissioner (DRC), which recommended that Father's parenting time be suspended until he provides a mental health assessment. After a review of the record and for the reasons set forth, we affirm.

## FACTUAL AND PROCEDURAL HISTORY

Father and Appellee, Jessica Clark (Mother) are the parents of Child, born in 2016. The parties were never married, and they separated when Child was approximately seven months old. Custody proceedings began in 2019, when Mother filed a Verified Petition for Sole Custody. An agreed order was entered in September 2019, in which the parties agreed to joint custody, and Father was to have timesharing every other weekend and every Tuesday evening through Thursday morning.

In June 2023, Mother filed a motion to modify the parenting time schedule, requesting that Father's timesharing be decreased and supervised. Mother alleged Father had no stable residence; he was facing abuse allegations by the Cabinet for Health and Family Services (Cabinet); he had pending criminal charges; and she feared for Child's safety. In the meantime, Mother filed a petition for a Domestic Violence Order (DVO), which was granted in October 2023, for a period of three years.

A hearing before the DRC occurred in November 2023. The DRC issued a report that recommended a timesharing modification which allowed Father to have four hours of parenting time every other weekend to be supervised by Father's grandmother. The circuit court adopted this recommendation in full in December 2023.

The next year, in May and again in December 2024, Father filed two motions to increase his parenting time. Mother then filed a motion to suspend Father's parenting time in February 2025, raising concerns about Father's mental health. Father had several new pending criminal charges, and he had voluntarily sought inpatient treatment at a Lincoln Trail Behavioral Health System facility. The parties had a hearing before the DRC in April 2025. The DRC entered a report which recommended:

> The Commissioner finds that the Petitioner has satisfied the statutory criteria to modify the Agreed Order entered on December 7, 2023, and that the modification should be that Respondent's parenting time as granted by said Order be suspended until such time as Respondent can provide a mental health assessment which identifies Respondent's current mental conditions and indicates how same are being treated. The Domestic Relations Commissioner further recommends that Respondent's parenting time also be suspended until such time as his criminal charges as charged in Meade District Court, 25-M-00017, and the Meade Circuit Court, 23-CR-102, be fully resolved as these matters are set for trial in July and August 2025, and that the combination of facing these criminal charges as well as the uncertainty that Respondent is adequately treating for this [sic] mental health conditions places the parties' child at risk while she is in Respondent's care as supervision alone would not guarantee the safety of the child.[1]

Father filed exceptions to the DRC report, and the circuit court heard arguments in May 2025. The circuit court entered its order overruling Father's

---

[1] Commissioner's Report, dated April 23, 2025, Trial Record (TR) at page 122.

-3-

objections and adopting the DRC report.  Father then timely filed this *pro se*

appeal.  Further evidence and testimony will be discussed below as necessary.

## STANDARD OF REVIEW

"Generally, we review a family court's decision to modify visitation

or timesharing for abuse of discretion." *Turner v. Turner*, 672 S.W.3d 43, 50 (Ky.

App. 2023).  "However, we review its application and interpretation of statutes *de*

*novo.*  *Id.*  "Lastly, we review factual findings for clear error; meaning we will not

disturb factual findings unless they are not supported by substantial evidence."  *Id.*

at 50-51.  "The test for abuse of discretion is whether the trial judge's decision was

arbitrary, unreasonable, unfair, or unsupported by sound legal principles."

*Goodyear Tire & Rubber Co. v. Thompson*, 11 S.W.3d 575, 581 (Ky. 2000).

## ANALYSIS

Father argues on appeal that the circuit court committed an error of

law by misapplying KRS[2] 403.320(3) when it suspended his parenting time.  He

further argues there was no competent evidence to support a finding of serious

endangerment.

Before we proceed to the merits of Father's appeal, Mother argues the

appeal should be dismissed as the circuit court's order was not final and

appealable.  At first glance, this might appear to be correct.  The DRC report

---

[2] Kentucky Revised Statutes.

-4-

recommends that Father's parenting time be suspended only until such time as he is able to provide a mental health assessment and resolve his pending criminal charges. The circuit court clearly indicates it will review this matter again once those events have occurred.

Although indefinite, the order entered by the circuit court changes the father's timesharing and not just while a motion on the issue is pending. Our Supreme Court has stated that orders modifying final orders regarding visitation and timesharing are appealable. *See Anderson v. Johnson*, 350 S.W.3d 453, 455-56 (Ky. 2011). "When, by the exercise of its continuing jurisdiction, the family court enters an order regarding a minor child's care and custody, that order 'is an appealable order and this Court may review it.'" *N.B. v. C.H.*, 351 S.W.3d 214, 219 (Ky. App. 2011) (citing *Gates v. Gates*, 412 S.W.2d 223, 224 (Ky. 1967)).

Father argues the circuit court did not apply the proper law when it ordered a suspension of his parenting time. Both parties agree that KRS 403.320(3) is applicable to this case. That statute provides: "The court may modify an order granting or denying visitation rights whenever modification would serve the best interests of the child; but the court shall not restrict a parent's visitation rights unless it finds that the visitation would endanger seriously the child's physical, mental, moral, or emotional health." Father argues the DRC's recommendation is not merely a modification, but an improper restriction of his

parenting time.  He claims *Turner v. Turner, supra,* is analogous to this case.  This

Court stated:

> Our Supreme Court has construed KRS 403.320(3) to mean timesharing can be modified if the family court finds modification in the children's best interests.  But a court cannot restrict timesharing—meaning order less than reasonable timesharing—unless it finds the child's health "was seriously endangered." *Layman* [*v. Bohanon*, 599 S.W.3d 423, 431 (Ky. 2020).]  There is no set definition of what less than reasonable timesharing means in every case; however, "it does not necessarily mean that a parent has less than reasonable timesharing just because he or she spends less time with the child than under the original timesharing arrangement." *Id.* at 432.
>
> Even though precedent does not rigidly define what less than reasonable timesharing is, surely the family court order's denying any form of timesharing or visitation for at least three months is a restriction and not a mere modification.  After all, the practical effect is to deny any visitation or timesharing—even supervised— for at least three months.  And long-standing precedent holds that a parent should not be denied visitation entirely without a finding that visitation would result in serious endangerment. *Smith v. Smith*, 869 S.W.2d 55, 56 (Ky. App. 1994) (construing KRS 403.320(1)).

*Turner v. Turner*, *supra*, at 53 (footnotes omitted).

Some of the circumstances in *Turner* are similar to the facts in this

case—with one important distinction.  The trial court in *Turner* did not make any

findings regarding serious endangerment.  The circuit court here *did* make such

findings.  The circuit court reviewed the record of the DRC hearing and

determined: "Based on the evidence presented before the Commissioner, Respondent's recent behavior indicates that, without further assurance of Respondent's mental wellbeing, M.H.'s safety and welfare would be seriously endangered by continued proximity to Respondent."[3] The circuit court made adequate findings to restrict Father's timesharing with Child.

Father further argues that even if the circuit court did apply the appropriate standard, there was no competent evidence to support a finding of serious endangerment. He claims it was inappropriate for the circuit court to consider his pending criminal charges in making its ruling.

We were not provided with a copy of the hearing that occurred before the DRC. Even so, the record provided includes reference to undisputed matters of public record (criminal charges and DVO proceedings) which enables us to determine that the factual findings here were not clearly erroneous.[4]

---

[3] Order entered September 19, 2025, TR at page 140.

[4] A plain reading of the Kentucky Rules of Appellate Procedure (RAP) 26(A)(3) seems to direct that all video recorded proceedings shall be made part of the record on appeal. Yet RAP 24(B)(1) directs an appellant to designate relevant hearings to be included. If part of the record is not included, we are directed not to consider the arguments based on the missing record. RAP 25(B). The law also includes a presumption that any missing part of the record supports the lower court's decision. *Commonwealth v. Thompson*, 697 S.W.2d 143 (Ky. 1985). We could direct that the record be supplemented with the missing hearing. RAP 25(D)(2). Again, in the particular circumstances of this case, that is not necessary because of the other evidence of record.

At the time of the hearing, Father had been found to have violated two separate DVOs, one involving Mother and the other involving the mother of Father's other child. Father had pled guilty to Terroristic Threatening—3rd degree, in which Mother was the victim. He had pending criminal charges for Harassment, Criminal Trespassing, Disorderly Conduct, and Menacing, which stemmed from an event where he was in a wooded area and had a verbal altercation with a resident of one of the homes near the woods. Father had been knocking on doors, stating he was looking for his wife (although Father is not married) who someone was holding nearby. Father had sought treatment at a psychiatric facility. Based on all these events, it is not unreasonable to conclude that Father's mental health was deteriorating and presented a serious danger to Child.

KRS 403.270(2) outlines some of the relevant factors a court is to consider when determining a parenting schedule that is in a child's best interest. Subsection (f) of this statute is "the mental and physical health of all individuals involved[.]" A circuit court is explicitly required to consider the mental health of the parents, and it necessarily follows that the court has the discretion to order a mental health assessment when a parent's psychological state is questioned.

The circuit court did restrict Father's parenting time, but that court's conclusion that Child's safety and welfare were seriously endangered was not

clearly erroneous based on the evidence presented. Additionally, while we rule on the merits of Father's appeal, the restriction on his parenting time was always meant to be temporary. It is certainly possible Father will be able to have his parenting time restored if he is able to show the circuit court that improvement in his mental health is such that he will not present a danger to Child. That is for the circuit court to determine upon the filing of a new motion. As a circuit court has continuing jurisdiction to modify custody and timesharing of minor children, it can revisit its prior orders whenever it is in the bests interests of the child to do so. *See Anderson*, 350 S.W.3d at 456.

## CONCLUSION

The circuit court applied the proper standard, its factual findings were not clearly erroneous, and it did not abuse its discretion. We therefore AFFIRM the order of the Breckinridge Circuit Court.

ALL CONCUR.

BRIEF FOR APPELLANT:

Christopher Higgins, *pro se*
Webster, Kentucky

BRIEF FOR APPELLEE:

Stephen G. Hopkins
Hardinsburg, Kentucky