**Vernia McNEELEY, Appellant,**

v.

**William McNEELEY, Appellee.**

**No. 1999–CA–001235–MR.**

Court of Appeals of Kentucky.

May 18, 2001.

Leonard Stayton, Inez, KY, Brief for Appellant.

William McNeeley, pro se, Brief for Appellee.

Before GUDGEL, Chief Judge; COMBS, and McANULTY, Judges.

## OPINION

McANULTY, Judge.

Vernia McNeeley (hereinafter appellant) appeals the order of the Martin Circuit Court which granted visitation with her four minor children to their father, William McNeeley (hereinafter appellee), who is incarcerated for intentional murder. Appellant argues that the trial court erred in granting the motion for visitation without holding a hearing. We agree.

The parties were divorced in June 1993. The divorce decree awarded appellant full custody of their four children and found that it was in the best interests of the children that appellee not be awarded visitation in that he was incarcerated. The decree was not appealed.

On April 29, 1996, appellee filed a motion for visitation with the minor children. He acknowledged that he had been convicted of "a felony" and was "likely to remain" in the correctional system for some time. He asserted that despite his incarceration he was entitled to reasonable visitation. The trial court passed the motion until appellee obtained an attorney. After some delay, a guardian ad litem was appointed who filed a motion for visitation on appellee's behalf. On May 4, 1999, the court entered an order that granted appellee's motion for visitation. The court stated that appellee would be afforded visitation privileges in accordance with the policies and procedures of the penal institution, with appellee responsible for making transportation arrangements. Appellant appealed this order.

■ Appellant first contends that the trial court's original holding as to visitation is the law of the case. While this is true, we do not find that the law of the case doctrine precludes the trial court's order. Pursuant to KRS 403.320(3), a decree granting or denying visitation may be modified. Thus, the trial court's original finding that visitation was not in the children's best interest does not bar a later modification of that ruling.

■ Appellant next argues that it was error for the trial court not to hold a hearing on the motion for modification. KRS 403.320(1) requires a hearing when visitation is considered for the noncustodial parent. KRS 403.320(3), regarding modification of a visitation order, does not specifically address whether a hearing is required. It states:

> The court may modify an order granting or denying visitation rights whenever modification would serve the best interests of the child; but the court shall not restrict a parent's visitation rights unless it finds that the visitation would endanger seriously the child's physical, mental, moral, or emotional health.

Furthermore, if there are issues as to domestic violence, KRS 403.320(2) requires a hearing:

> If domestic violence and abuse, as defined in KRS 403.720, has been alleged, the court shall, after a hearing, determine the visitation arrangement, if any, which would not endanger seriously the child's or the custodial parent's physical, mental, or emotional health.

This Court has held that KRS 403.320 entitles a parent, even though incarcerated, to a hearing on the issue of visitation, and has observed that the modification provision of the statute contains the same "stringent" requirements for determining the appropriateness of visitation. *Alexander v. Alexander*, Ky.App., 900 S.W.2d 615, 616 (1995).

■ The issue before the court was whether to modify a prior order which denied visitation. In such a case, the presumption of entitlement to visitation is no longer a factor. *Hornback v. Hornback*,

Ky.App., 636 S.W.2d 24, 26 (1982). When visitation has already been denied, the standard for modification is not serious endangerment; rather, the best interests of the children governs. *Id.*[1] Moreover, since appellee is seeking the modification the burden of proof is on him to establish that it is in the best interests of the children to change the court's previous order.

We infer from the statute that a hearing is required for the purpose of determining the best interests of these children. The record reflects that no hearing has ever been held in this case on the issue of visitation. We conclude that that reason alone suffices to require the court to hold a hearing on the motion for modification. We do not see how the court can determine their best interests without a hearing on these issues.

We conclude that it was error for the trial court to modify and allow visitation without allowing appellant to be heard on the subject of the harm to the children. The visitation statute requires a hearing before visitation can be denied in the first instance and when there is any question of domestic violence. We believe that, factoring in these requirements, the opposing parent must be given an opportunity to be heard regarding a decision to grant visitation to a parent to whom it was previously denied. After all, in such an instance there has already been an adjudication that visitation was not in the best interests of the children, and that there existed some risk to their, or their custodial parent's, physical, mental or emotional health.

In this case, the trial court initially set the motion for a hearing, but passed the matter in order for appellee to obtain counsel. After the guardian ad litem was appointed, there is no record that appellant was permitted to be heard on appellee's motion for modification. Appellant did not respond to the motion; however, it is reasonable to assume that she was waiting for a hearing which was never rescheduled or held.

This case amply demonstrates why a hearing is necessary. It appears that the trial court made its determination on less than all of the facts necessary for a decision of this magnitude. Our examination of the record before the trial court discloses no information as to the offense for which appellee is imprisoned. Appellee is incarcerated on a life sentence for the intentional murder of a child entrusted to his care.[2] Appellee brutally killed his girlfriend's son, little Sherman Newsome, by beating or stomping him, lacerating his liver and mesentery, on the day before his second birthday. Appellee's girlfriend, Rebecca Newsome, and her children were living with appellee, appellant and their children. The documents appellant provided to this Court from appellee's criminal conviction are deeply troubling. They reflect that appellee was abusive to all the children in his household, which includes the minor children concerned in the case at bar.

---

1. We are aware that when it initially considered the visitation question, the trial court determined that visitation should be denied in the best interests of the children, rather than because visitation would seriously endanger the children's physical, mental, moral or emotional health. This was error. However, as the issue was not appealed, and appellee has never challenged the previous finding of the court, it is the law between the parties.

*Hornback,* 636 S.W.2d at 25. The trial court is obligated to use the standard in KRS 403.320(3) as to modification of an existing visitation order.

2. Appellee's judgment of conviction was not in the record. However, we take judicial notice of appellee's judgment of conviction and documents pertaining thereto. KRE 201(d) and (f).

It is not for us to decide on appeal whether visitation should be denied. That task is properly for the trial court. We are certain that the court will afford close scrutiny to the information which the appellant shall be permitted to proffer. The best interests of these children, who are not now under this father's influence, must control.

Therefore, we hold that the trial court erred in granting appellee's motion for visitation without holding a hearing and without reviewing appellant's evidence and reasons for denying visitation to appellee, who was convicted of the murder of a child. We remand for further proceedings consistent with this opinion.

ALL CONCUR.