RENDERED: OCTOBER 9, 2020; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2019-CA-1579-MR

HEATHER LERAE MOORE            APPELLANT


APPEAL FROM WHITLEY CIRCUIT COURT
v.     HONORABLE SAMUEL TODD SPALDING, SPECIAL JUDGE
ACTION NO. 14-CI-00600


EDDIE DEAN MOORE            APPELLEE


OPINION
AFFIRMING

** ** ** ** **

BEFORE: CALDWELL, DIXON, AND L. THOMPSON, JUDGES.

DIXON, JUDGE: Heather Lerae Moore appeals from the order allowing Eddie

Dean Moore unsupervised overnight visitation with the parties' children, and the

order denying her motion to alter, amend, or vacate said order, entered by the

Whitley Circuit Court on September 3, 2019, and October 10, 2019, respectively.

Following review of the record, briefs, and law, we affirm.

## FACTS AND PROCEDURAL BACKGROUND

Eddie had a son and a daughter prior to his marriage to Heather, and two daughters were born during the parties' marriage. Beginning when Eddie's eldest daughter was about eleven or twelve years old, there were two instances of Eddie touching the child's breast, one instance of Eddie asking her to show him her breasts, and one instance of him making her completely disrobe in front of him. These incidents occurred while the two were alone. In October 2014, a few years later, the daughter told Heather about these incidents. Heather confronted Eddie, who admitted the allegations were true but claimed he "was not like that anymore." Thereafter, Eddie contacted a sexual predator hotline—Stop It Now—to seek advice and confessed his actions to local law enforcement. On October 28, 2014, Heather filed for divorce. On January 29, 2015, the court awarded Eddie supervised visitation with the parties' children on alternating Sundays, and on March 20, 2015, Heather was awarded temporary custody of the parties' children.

Based on his confession, Eddie was charged and later tried by a jury. At trial, Eddie minimized and made excuses for his actions; nonetheless, he was acquitted on April 13, 2017. After his acquittal, Eddie began pursuing increased visitation with the parties' children. Following a hearing on the matter on July 10, 2017, the trial court entered its findings of fact and order granting Eddie supervised visitation with the parties' daughters each Saturday. Although the court found that

Eddie had sexually abused his eldest daughter, it also found that there were no allegations of abuse concerning the parties' children. The trial court noted that even Heather admitted that Eddie was a good father before the allegations arose. Eddie testified that he had an excellent relationship with his children prior to the allegations. Eddie's mother characterized him as a loving father and good provider, heavily involved in his children's lives. The court ordered Eddie to complete anger management classes, undergo a mental health assessment, and follow the recommendations of that counselor. It further provided that after six months, Eddie could petition the court for overnight and unsupervised visitation if he completed anger management and mental health counseling.

On January 23, 2018, having completed anger management and mental health counseling, Eddie moved the court for joint custody and unsupervised, overnight parenting time of the parties' children. An initial hearing on this motion was held on February 21, 2018, and the trial court ordered the parties to depose Terry W. North, LCSW,[1] and Edd Easton-Hogg, Psy.D—both of whom had interviewed Eddie. North saw Eddie on two occasions but did not receive a transcript of his confession to law enforcement until after those appointments. Dr. Easton-Hogg also met with Eddie on two occasions and performed a clinical interview, mental status exam, two personality tests, and a

---

[1] Licensed Clinical Social Worker.

formal cognitive assessment. Dr. Easton-Hogg was provided a copy of Eddie's interview with law enforcement prior to their first meeting. Dr. Easton-Hogg's report concluded that Eddie's "repeated actions are indicators of lack of empathy for his daughter." Another hearing was held on May 30, 2018, following which the court entered its order granting Heather sole custody of the parties' children and denying Eddie unsupervised and overnight visitation. As part of its findings, the trial court stated:

> [Eddie], in counseling sessions and during his testimony, continues to minimize his actions of touching his daughter's breast and asking her to disrobe in his presence. The failure of [Eddie] to appreciate the wrongful nature of this conduct places these parties' minor children at risk. Unless and until [Eddie] accepts responsibility for his actions and is genuinely remorseful, this Court will not modify the current visitation arrangement.

The court held "[p]rior to the Court considering either unsupervised or overnight visitation, [Eddie] shall complete psychotherapy to specifically target his inappropriate behaviors toward his oldest daughter, lack of impulse control and antisocial behavior." The trial court did, however, increase Eddie's visitation to two out of three Saturdays and Sundays.[2]

On April 5, 2019, having completed psychotherapy targeting his inappropriate behaviors toward his oldest daughter, lack of impulse control, and

---

[2] Due to scrivener's error, the order stated Sundays and Sundays.

antisocial behavior, Eddie again moved the court for joint custody and unsupervised, overnight parenting time. A hearing was held on August 22, 2019, at which Samantha Baker, a sex offender social service clinician, testified that she had conducted more than a dozen counseling sessions with Eddie. Baker opined that Eddie is not at high risk to reoffend and that his primary issues involve irresponsibility and self-esteem. Eddie testified at the hearing that he has an excellent relationship with the parties' children, and they enjoy exercising visitation with him. Eddie admitted what he did to his eldest daughter was a horrible act for which he was very sorry. He swore he would never engage in such activity with the parties' daughters. The trial court interviewed the parties' children in its chambers and in the presence of counsel. One child stated that she enjoys going to Eddie's house and loves him very much, but she does not have a close relationship with him and would prefer not to visit overnight. The parties' other daughter testified that she would prefer not to visit Eddie overnight because she would miss Heather.

On September 3, 2019, the court denied Eddie's request for joint custody but allowed unsupervised visitation with the parties' children on alternating weekends. In its order, the court specifically found that an award of joint custody would not serve the best interest of the parties' children and, further, that the parties' children would not be at risk were Eddie to exercise overnight

unsupervised visitation.  On September 6, 2019, Heather moved to alter, amend, or vacate the court's order, alleging that neither testimony at the hearing nor the court's findings support an award of unsupervised overnight visitation.  The children's guardian *ad litem* filed a response joining the motion.  The matter was heard on October 2, 2019, and on October 10, 2019, the court denied the motion. This appeal followed.

## NONCOMPLIANCE WITH RULES OF APPELLATE PROCEDURE

Another panel of our Court has recently addressed the growing problem of noncompliance with the rules of appellate practice.

> This Court is weary of the need to render opinions such as this one, necessitated as they are by the failure of appellate advocates to follow rules of appellate advocacy. In just the last two years, at least one hundred and one (101) Kentucky appellate opinions were rendered in which an attorney's carelessness made appellate rule violations an issue in his or her client's case.  The prodigious number of attorneys appearing in Kentucky's appellate courts lacking the skill, will, or interest in following procedural rules is growing.  In 2005, only two (2) Kentucky opinions addressed appellate rules violations.  In 2010, the number jumped to eleven (11). In 2015, the number rose slightly to fourteen (14).  The average for the last two years is more than three times that. If this is not a crisis yet, it soon will be if trends do not reverse.
>
> We will not reiterate all that has been said too many times before on this subject.  If a lawyer is curious about the importance of these procedural rules or the practical reasons for following them, we recommend reading these opinions in chronological order*: Commonwealth v. Roth*,

567 S.W.3d 591 (Ky. 2019); *Koester v. Koester*, 569 S.W.3d 412 (Ky. App. 2019); *Hallis v. Hallis*, 328 S.W.3d 694 (Ky. App. 2010); *Elwell v. Stone*, 799 S.W.2d 46 (Ky. App. 1990).

. . . Some rule violations are alone sufficient to justify applying a manifest injustice standard of review or, worse, striking the brief. CR[3] 76.12(8); *see also Roth*, 567 S.W.3d at 593; *Mullins v. Ashland Oil, Inc.*, 389 S.W.3d 149, 154 (Ky. App. 2012). Other violations are less profound; however, "there is an important purpose behind each of these rules." *Hallis*, 328 S.W.3d at 696 (referring by footnote to the purpose underlying some of the more mundane rules).

*Clark v. Workman*, 604 S.W.3d 616, 616-18 (Ky. App. 2020) (footnotes omitted).

Below are the subsections of CR 76.12 which Heather's brief violates, listed as they appear in the rule:

• Subsection (4)(c)(v) (requiring "at the beginning of the argument a statement with reference to the record showing whether the issue was properly preserved for review and, if so, in what manner");

• Subsection (4)(c)(vii) (requiring that "[t]he appellant shall place the judgment, opinion, or order under review immediately after the appendix list [*i.e.*, or index] so that it is most readily available to the court"); and

---

[3] Kentucky Rules of Civil Procedure.

• Subsection (4)(c)(vii) (requiring that documents in the appendix be marked by "appropriate extruding tabs").

Notwithstanding these errors, this Court will not strike the brief and dismiss the appeal. The two issues presented were properly preserved for review.

## STANDARD OF REVIEW

The standard of an appellate court's review of a trial court's findings of fact is well-settled.

> The trial court heard the evidence and saw the witnesses. It is in a better position than the appellate court to evaluate the situation. *Gates v. Gates*, [412 S.W.2d 223 (Ky. 1967)]; *McCormick v. Lewis*, [328 S.W.2d 415 (Ky. 1959]. **The court below made findings of fact which may be set aside only if clearly erroneous**. *Hall v. Hall*, [386 S.W.2d 448 (Ky. 1964)]; CR 52.01, 7 Kentucky Practice, Clay 103. We do not find that they are. They are not "manifestly against the weight of evidence." *Ingram v. Ingram*, [385 S.W.2d 69 (Ky. 1964)]; *Craddock v. Kaiser*, 280 Ky. 577, 133 S.W.2d 916 [Ky. 1939)]. A reversal may not be predicated on mere doubt as to the correctness of the decision. *Buckner v. Buckner*, 295 Ky. 410, 174 S.W.2d 695 [Ky. 1943)]. **When the evidence is conflicting, as here, we cannot and will not substitute our decision for the judgment of the chancellor.** *Gates v. Gates*, supra; *Renfro v. Renfro*, [291 S.W.2d 46 (Ky. 1956)].

*Wells v. Wells*, 412 S.W.2d 568, 571 (Ky. 1967) (emphasis added). Accordingly, the crux of this case is whether the trial court's findings of fact are supported by substantial evidence. Substantial evidence is evidence that, when taken alone or in light of all the evidence, has sufficient probative value to induce conviction in the

minds of reasonable men. *Moore v. Asente*, 110 S.W.3d 336, 354 (Ky. 2003).

After careful review, we hold that the court's findings of fact are supported by

substantial evidence; therefore, we must affirm.

## EFFECT OF PREVIOUS RULINGS, SUBSTANTIAL EVIDENCE

On appeal, Heather criticizes the court's departure from its prior

orders that Eddie would not be allowed unsupervised or overnight visitation until

he accepts responsibility for his actions and is genuinely remorseful. Although she

failed to explain in depth, Heather's argument is essentially one of either "the law

of the case doctrine" or "the law of *this* case" doctrine—as discussed at length by

the dissent.

The law of the case doctrine concerns the extent to which a judicial

decision made at one stage of litigation is binding at a subsequent stage. "[I]n

Kentucky, the law of the case doctrine applies only to rulings by an appellate court

and not to rulings by a trial court." *Dickerson v. Commonwealth*, 174 S.W.3d 451,

466-67 (Ky. 2005). Under this theory, since there are no prior orders from an

appellate court on the issue of visitation, the trial court need not continue to deny

Eddie unsupervised and overnight visitation simply because it did so in the past.

Under the law of *this* case doctrine, a "prior order specifying the

conditions [upon which increased visitation is prefaced] *must* be complied with

when considering modification. It is the law of the case between the parties."

*Oster v. Oster*, 444 S.W.3d 460, 469 (Ky. App. 2014) (emphasis added). Here, substantial evidence shows that Eddie did, in fact, comply with the court's previous orders concerning the steps he needed to take to expand his visitation.

Heather asserts the court's decision was not supported by substantial evidence. This claim is not borne out by the record. Substantial evidence supported the court's expansion of its award of visitation as being in the children's best interest.[4] Importantly, Baker testified that Eddie was not at high risk to reoffend, and Eddie completed counseling, underwent several evaluations, and is not accused of conduct involving the parties' children. In its order, the trial court specifically found "the parties' children would not be at risk by [Eddie] exercising overnight unsupervised visitation." Its decision was supported by substantial evidence; therefore, we must affirm.

---

[4] The dissent—not Heather—raises the concern that the trial court failed to consider the best interest of the children in increasing their visitation with Eddie. Heather's failure to raise the issue on appeal constitutes abandonment and/or waiver of this issue. "Indeed, the standard rule is that this Court will decline to address *sua sponte* issues not raised by the parties on appeal." *Johnson v. Commonwealth*, 450 S.W.3d 707, 713 (Ky. 2014). Nevertheless, while it may be a better practice for the trial court to specifically find the modification of visitation to be in the children's best interest, here such was implied. Kentucky Revised Statutes (KRS) 403.270(2) addresses this standard. It is clear from our review of the record that the trial court heard sufficient evidence to meaningfully consider the statutory factors relevant to the children's best interest in this case. In its orders, the trial court gave lengthy and detailed finding of facts. The findings of fact that satisfy the statutory requirements can be found in numbered paragraphs 4, 7, 9, 12, 14, and 17 of the trial court's September 3, 2019 order. By contrast, its conclusions of law were more succinct. We also note that the trial court failed to specifically find the award of sole custody of the children to Heather on June 5, 2018, was in the best interest of the children. Again, failure to challenge and/or appeal that issue constitutes abandonment and/or waiver of the issue.

-10-

**RISK OF HARM**

Heather further argues the trial court erred by failing to consider the risk of harm to the parties' children. As previously discussed, this claim is simply not borne out by the record. Heather compares this case to *Cabinet for Health and Family Services v. R.S.*, 570 S.W.3d 538 (Ky. 2018). However, this case is certainly distinguishable from *R.S.*, which involved a twice-convicted sex offender who violated the terms of his probation and failed to register as a sex offender. Nonetheless, the Court observed "matters like the one before us today must be evaluated on a case-by-case basis." *Id.* at 548. Moreover, as Heather admits, the court's decision regarding whether to grant or restrict visitation must be balanced against the risk of harm to the children, requiring consideration of the totality of the circumstances. It is clear from the lengthy and detailed discussion by the court in its order that it carefully weighed the evidence in reaching its decision. The trial court's findings were supported by substantial evidence, and its rulings did not abuse its discretion. Thus, we must affirm.

**CONCLUSION**

Therefore, and for the foregoing reasons, the orders entered by the Whitley Circuit Court are AFFIRMED.

THOMPSON, L., JUDGE, CONCURS.

CALDWELL, JUDGE, DISSENTS AND FILES SEPARATE OPINION.

CALDWELL, JUDGE, DISSENTING: I respectfully dissent. I do not disagree with the standard of review as set out by the majority that the trial court's findings of fact cannot be set aside unless they are clearly erroneous. "[W]ith regard to custody matters, 'the test is not whether we would have decided differently, but whether the findings of the trial judge were clearly erroneous or he abused his discretion.'" *Miller v. Harris*, 320 S.W.3d 138, 141 (Ky. App. 2010) (citing *Eviston v. Eviston*, 507 S.W.2d 153, 153 (Ky. 1974); *Cherry v. Cherry*, 634 S.W.2d 423 (Ky. 1982)). However, I disagree that the conclusion reached by the trial court in applying those facts was not an abuse of discretion; it was.

First and most importantly, the standard for modification of a visitation order is governed by KRS 403.320(3) which **requires** that any modification be in the best interest of the child. The trial court's findings of fact entered September 3, 2019, conclude with the statement, "Having considered the testimony and the Court record, the Court finds the parties' children would not be at risk by the Respondent exercising visitation." KRS 403.320(3) states:

> The court may modify an order granting or denying visitation rights whenever modification would serve the best interests of the child; but the court shall not restrict a parent's visitation rights unless it finds that the visitation would endanger seriously the child's physical, mental, moral, or emotional health.

-12-

This statute has been interpreted in multiple cases to mean that after an initial order is entered regarding parenting time or visitation, any subsequent motion to amend that order must show that the modification is in the best interest of the children, and that the second clause of the subsection is applied when it is determined that the modification of the visitation rights sought is to take away a parent's reasonable visitation rights that had been previously given. Our Court affirmed this interpretation as far back as *Hornback v. Hornback*, 636 S.W.2d 24 (Ky. App. 1982). In that action the Court stated:

> In modifying a previous denial of visitation to allow visitation, there is no presumption, as in subsection (1), of entitlement to visitation. Instead, the child's best interests must prevail. In this case, having found in the original judgment that the Hornback children's welfare would be endangered if the mother were allowed visitation, the court may not now modify that judgment without a finding that the modification would be in the children's best interests. No such finding appears in the judgment; instead, the court is apparently attempting to "reward" the mother for seeking psychiatric help.
>
> We interpret the second clause of subsection (2) as referring to a situation where a party seeks to modify visitation rights that have been previously granted. In such a situation the court may not take away a parent's visitation without a showing that the child would be seriously endangered by visitation. The standards for modifying a judgment to disallow visitation are no less stringent than the standards to deny visitation at the outset of a case. **Once a finding has been made that the children's welfare is endangered, however, the**

**court may not modify the judgment without a finding that the best interests of the child are served**.

*Id.* at 26 (emphasis added).

The *Hornback* interpretation has been repeatedly reaffirmed in cases such as *Smith v. Smith*, 869 S.W.2d 55 (Ky. App. 1994), and *McNeeley v. McNeeley*, 45 S.W.3d 876 (Ky. App. 2001). In citing to *Hornback*, our Court held in *McNeeley* that "[w]hen visitation has already been denied, the standard for modification is not serious endangerment; rather the best interests of the children governs." *Id.*, 45 S.W.3d at 878. Furthermore, the *McNeeley* Court concluded that once the non-custodial parent's visitation had been denied, the burden rests upon that parent to prove that reinstating visitation is in the children's best interest. *Id.*

The Supreme Court of Kentucky most recently addressed this issue again, albeit in the direction of determining that the amendment to the language of KRS 403.270(2) did not affect the plain language of KRS 403.320, in *Layman v. Bohanon*, 599 S.W.3d 423 (Ky. 2020). The Supreme Court stated:

> [W]e turn to the plain language of the two statutes at issue: KRS 403.270 and KRS 403.320. Each addresses a separate stage of a custody dispute: the initial custody determination and modification of visitation or timesharing. For each of these stages, a different standard is established. Under KRS 403.270, an initial determination of custody requires consideration of the best interests of the child, with a rebuttable presumption that joint custody and equal parenting time is in the child's best interests. A modification of visitation or timesharing, governed by KRS 403.320, on the other

-14-

> hand, requires that the change be in the best interests of the child, unless the modification is "less than reasonable," in which case the physical, mental, moral or emotional health of the child must be seriously endangered.

*Id.* at 430.

In the case at hand, Eddie is seeking to change, or modify, the current visitation. The trial court had previously found (twice) that the parties' children would be at risk if left in Eddie's care unsupervised and so had ordered that Eddie's visitation be supervised and not overnight. Now the trial court has **modified** the visitation so that Eddie now has visitation every other weekend, unsupervised and overnight. However, there is no language in the order where the court found that this modification would be in the best interest of the children even though this is a mandatory finding. In fact, based on the plain reading of the language of the order, "[T]he Court finds the parties' children would not be at risk by the Respondent exercising overnight unsupervised visitation[,]" the only logical conclusion is that the trial court did not consider the best interest of the children. It bears repeating, pursuant to KRS 403.320, a trial court may **modify visitation** rights at any time whenever such would serve the **best interest** of the child. And in making this finding, it is mandatory that the court specifically state the facts that support such a finding.

Additionally, I agree with Appellant Heather's argument that the trial court's ruling was arbitrary in its significant departure from its own prior judgments. In its opinion herein, the majority described Heather's argument as one for the "law of the case" doctrine, and correctly stated that such doctrine only applies to rulings by an appellate court and not to rulings of the trial court. However, Heather's argument is actually an argument for application of the "law of the case between the parties" doctrine, and it does apply to the trial court.

> Again, looking at *Hornback*, the Court there stated:

> In this instance, the original judgment excluded the natural mother from having visitation with her children. This judgment was not appealed. Further, the judgment laid the ground rules upon which Carolyn Hornback could redeem herself and establish visitation rights. Being an unappealed judgment, it is the law of the case between the parties. It must be complied with when considering modification along with K.R.S. 403.320(2).

636 S.W.2d at 25. *Hornback* goes on to say:

> Here, we do not find either the judgment or the statute being complied with. The judgment required that before the mother would be granted visitation, her mental health must be improved to the point where she was mentally and emotionally stable. Her mental and emotional stability was to be verified by Comprehensive Care. (Comprehensive Care is a regional Community Mental Health/Mental Retardation Board licensed by the State of Kentucky.) This was not an unreasonable condition of the judgment; but regardless of its reasonableness, it remains the law between the parties in this case since it was unappealed.

*Id.*

This Court again determined that the "law of the case between the parties" doctrine is applicable in custody actions in *Oster v. Oster*, 444 S.W.3d 460 (Ky. App. 2014). In *Oster*, the appellant was seeking to reinstate supervised visitation where the trial court had previously found, "For Paula to have contact with her children, she must comply with *all* recommendations as set out by Dr. [Kave] Zamanian. Dr. Zamanian is appointed to oversee Paula's reintroduction into the boys' lives, and Paula must comply with all directives." *Id.* at 463. In its subsequent order, the trial court set out terms to begin supervised visitation, even though it found that "[b]y all accounts, Paula has not complied with all the recommendations of Dr. Zamanian as set out in the July 2011 order." *Id.* at 464. Therefore, this Court held:

> Importantly, the trial court conditioned reunification on compliance with "*all*" of Dr. Zamanian's recommendations and even underlined the word "all" for extra emphasis. Partial compliance–or even full compliance with some, but not all–of the items recommended was not enough to trigger reinitiation of contact with Paula's children. Until the July 2011 order is set aside, modified or reversed, it is binding on the parties and Paula must obey it. *See Crook v. Schumann*, 292 Ky. 750, 167 S.W.2d 836, 839 (1942) (in context of contempt motion).

*Id.* at 465.

In the case *sub judice*, the trial court, in its July 10, 2017 order found:

39.    During his testimony at trial and the evidentiary hearing, the Respondent did say his actions were not appropriate.  However, the Court does not believe the Respondent comprehends how inappropriate his actions were, the devastating effects they had on [K.M.] and the significant risk they pose to his two younger daughters.

40.    Although there are no allegations of abuse regarding the two children shared by these parties, the Petitioner is greatly concerned about the Respondent's potential actions when her daughters reach puberty.  The Court shares the concerns of the Petitioner.

Then, in ruling on Eddie's first motion to modify his supervised visitations with his

daughters, the trial court found in its June 5, 2018 order:

25.    When describing how his actions were inappropriate at the evidentiary hearing on February 21, 2018, the Court finds it significant the Respondent never stated he should not have touched his daughter's breast or had her strip naked in his presence.  It was only after leading questions of his outstanding attorney that the Respondent acknowledged the above actions were inappropriate.  The Petitioner believes, justifiably in this Court's opinion, that the failure of the Respondent to acknowledge wrongdoing places the parties' minor children at risk if unsupervised visitation is awarded.

. . .

29.    The Respondent, in counseling sessions and during his testimony, continues to minimize his actions of touching his daughter's breast and asking her to disrobe in his presence.  The failure of the Respondent to appreciate the wrongful nature of this conduct places these parties' minor children at risk.  **Unless and until the Respondent accepts responsibility for his actions and is genuinely remorseful, this Court will not modify the current visitation arrangement.**

-18-

(Emphasis added.)

Then Eddie filed another motion on April 5, 2019 again seeking joint custody and to modify visitation. After another hearing the trial court issued its findings of fact and conclusions of law on September 3, 2019, from which this appeal was taken. It is noteworthy that the trial court, in its findings states:

> 4. The Court will not recite the factual history of this litigation, as such history is addressed extensively in previous orders. The Court's reasoning for limiting and supervising the Respondent's timeshares concern his actions involving his older daughter, [K.M.], who is not the subject of this litigation. The Respondent has never been accused of acting inappropriately in the presence of these parties' children. However, because of the Respondent's actions regarding [K.M.], the Court previously found, on two occasions, that the above children were at risk if unsupervised visitation were ordered. In Finding of Fact #29, in the Order entered June 5, 2018, the Court found as follows:

>> 29. The Respondent, in counseling sessions and during his testimony, continues to minimize his actions of touching his daughter's breast and asking her to disrobe in his presence. The failure of the Respondent to appreciate the wrongful nature of this conduct places these parties' minor children at risk. Unless and until the Respondent accepts responsibility for his actions and is genuinely remorseful, this Court will not modify the current visitation arrangement.

The trial court has previously explicitly found that Eddie has not accepted responsibility for his actions, acknowledged their harmfulness, nor shown any remorse for these actions. The trial court rightly concluded that until Eddie could

-19-

accept such responsibility and show genuine remorse, there could be no further expansion of his visitation and it would remain supervised. However, after finding that not only had Eddie not accepted responsibility or shown genuine remorse but also that he likely never would, the trial court went on to conclude in its order of September 3, 2019, that there would be no risk of harm to now allow him visitation with his younger daughters–importantly, daughters who are now near the age K.M. was when Eddie first perpetrated on her.

Such a conclusion, where neither the previous judgment of the trial court, nor the modification of custody statute, has been complied with is clearly an abuse of discretion. While Heather did not specifically argue that Eddie failed to meet his burden of proving that modification of visitation would be in the children's best interest, any such argument is subsumed by the argument that he did not even meet the burden of proving the children would not be at risk if visitation is modified. I would vacate the judgment of the trial court.

BRIEFS FOR APPELLANT:

Hailey Scoville Bonham
London, Kentucky

BRIEF FOR APPELLEE:

Douglas G. Benge
London, Kentucky