RENDERED: MAY 5, 2023; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2021-CA-1226-MR

DYLAN BRYCE WAGERS                                        APPELLANT

v.
APPEAL FROM LAUREL CIRCUIT COURT
HONORABLE STEPHEN M. JONES, JUDGE
ACTION NO. 17-CI-00228

ASHLEY NICOLE COUTURE                                      APPELLEE

AND

NO. 2021-CA-1334-MR

ASHLEY NICOLE COUTURE                              CROSS-APPELLANT

v.
APPEAL FROM LAUREL CIRCUIT COURT
HONORABLE STEPHEN M. JONES, JUDGE
ACTION NO. 17-CI-00228

DYLAN BRYCE WAGERS                                 CROSS-APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE:  EASTON, ECKERLE, AND McNEILL, JUDGES.

EASTON, JUDGE:  The Appellant/Cross-Appellee ("Dylan") appeals from the family court's decision not to modify the parties' timesharing agreement when their minor child ("L.B.W.") started school.  Dylan alleges he was entitled to another evidentiary hearing to determine if modification was in the child's best interest.

The Appellee/Cross-Appellant ("Ashley"), filed a cross-appeal, alleging the family court erred in allowing Dylan to claim L.B.W. for tax purposes for the next five tax years as an adjustment for a violation of an agreement between the parties about such tax exemptions.  Ashley acknowledges she did not preserve this issue, but she claims CR[1] 61.02 applies because the family court's order constituted palpable error.

Having reviewed the record and the applicable law, we affirm on both appeals.

---

[1] Kentucky Rules of Civil Procedure.

## FACTUAL AND PROCEDURAL HISTORY

The parties were never married, but they cohabitated for a while until early 2017. Their only child, L.B.W., was born on June 23, 2016. Dylan filed a petition to establish custody and timesharing in March 2017. Dylan was then and still is represented by a family member attorney (his stepfather), while Ashley was *pro se*. The parties entered into an agreement ("Agreement"), which was adopted by the family court as an order in April 2017. This Agreement stated the parties were to have joint custody of L.B.W. The Agreement outlined the parties' parenting time, including some holidays. The Agreement did not convey how long it would remain in effect, and it did not state an end date.

An amended visitation schedule ("Amended Agreement") was filed with the court less than one year later in February 2018. This Amended Agreement stated that Dylan would have timesharing with L.B.W. from Thursday at 9:00 a.m. to Friday at 5:00 p.m. one week, and the following week he would have timesharing from Thursday at 9:00 a.m. to Sunday at 5:00 p.m., with this schedule rotating each week. Again, the Amended Agreement did not list any end date. It contained no provision for any future date when it should be amended or reviewed. No future school schedule or anything regarding school was referenced. The Amended Agreement did not change anything from the original Agreement except Dylan's visitation schedule.

The parties clearly have issues with communicating and agreeing about what is best for L.B.W. Dylan filed several motions beginning within a month of the Amended Agreement. The family court has been called upon to address vacation weeks and alternating holidays, including Easter, which remains a point of contention. One motion determined time for L.B.W. to attend Vacation Bible School.

In August 2019, Ashley filed a *pro se* motion to modify the timesharing agreement. In this motion, she asked for Dylan to have timesharing every other weekend. She made several other requests, including a motion to transfer venue from Laurel County to Madison County, where she and the child live. Her motions were all overruled.

In March 2021, Dylan filed a motion for contempt against Ashley. He alleged that per their Agreement, the parties were to alternate who claimed L.B.W. as a dependent on their tax returns. Dylan alleged Ashley claimed L.B.W. for the 2020 tax return when he was entitled to claim him. In this motion, Dylan also moved the family court to grant him half of the stimulus money Ashley received relating to L.B.W. He followed up with another motion less than ten days later asking the family court to require Ashley to divide any stimulus money received on L.B.W.'s behalf in the future.

Ashley then retained counsel. On March 15, 2021, Ashley's counsel filed an entry of appearance as well as another motion to modify the timesharing schedule, because L.B.W. would be starting school in August. The next day, Dylan filed a motion for L.B.W. to attend school in Laurel County, rather than Madison County, where Ashley was planning to enroll him. A hearing on these motions was scheduled for June 1, 2021. A one-hour limit on the hearing was imposed by the family court.

At the June 1 hearing, Dylan called Mary Foster ("Foster") as a witness. Foster is a licensed professional counselor and a school social worker. Foster is also a close family friend of Dylan. Foster testified that she previously worked at the school where Ashley was planning to enroll L.B.W. She further testified this school had a high turnover rate of teachers and staff, that the school did not have a lot of resources, and that the school had low rankings. She also said the elementary school proposed by Dylan in Laurel County was ranked higher.

Foster additionally testified that Dylan and L.B.W. have a very strong bond, and it is her belief that it is very important for a child, especially a male child, to have a positive relationship with his father. She acknowledged she had never worked with Dylan and L.B.W. in any therapeutic setting. She also conceded she was not a teacher, and she had not been in the schools about which she testified since the COVID-19 pandemic.

Dylan testified next. He explained he attempted to claim the child as a dependent for the 2020 tax year, but his return was rejected because Ashley had already claimed L.B.W. He further testified he and his son have a good relationship. He takes L.B.W. to church, the park, the library, the zoo, and on other outings. Dylan stated he has trouble communicating with Ashley. He testified he wants to enroll L.B.W. in Laurel County schools, because it is a better school district and because he would be able to spend more time with L.B.W. Dylan does a limited amount of work because he receives Social Security Disability. This enables him to spend more time with L.B.W.

Ashley testified next. Ashley is the preschool coordinator at the elementary school where L.B.W. was to be enrolled in Madison County. Ashley explained she does not agree with Foster's testimony regarding this school, and that her own observations at the school were very positive. Ashley stated L.B.W. will start kindergarten in August. Ashley further testified she and Dylan have never had any conversation about L.B.W. going to school anywhere other than Madison County. L.B.W. has attended daycare and preschool there, and she stated Dylan has never objected to the child attending school there.

Regarding the tax returns, Ashley said she believed claiming L.B.W. as a dependent was separate from claiming the child tax credit. She acknowledged she claimed the child tax credit for the child every year, because he lives with her

more than 50% of the time. She was also confused as to whether the year she was to claim the child was the tax year or the calendar year. Ashley said Dylan never asked for any of L.B.W.'s stimulus money.

Ashley objected to L.B.W. attending school in Laurel County, because it would require her to quit her job to get him to school. Dylan's counsel then made the remark that this would not be the case if the court just gave the child to Dylan. Ashley's counsel objected, as Dylan had not made a motion to modify custody, only a motion regarding which school district the child should attend. In effect overruling the objection, the judge directed Ashley's attorney to call her witnesses.[2]

The family court judge ruled orally on all motions from the bench. As to Dylan's motion for contempt, the judge stated he was not convinced Ashley intentionally violated the Agreement; however, he agreed she was in violation of it. To make Dylan whole, the judge ordered that Dylan was to claim L.B.W. for the tax years 2021-2025, and then the parties' alternating schedule would again control. The judge additionally ordered that should Ashley receive any further stimulus money on L.B.W.'s behalf, she was to split it with Dylan.

As to Ashley's motion to modify, the family court overruled this motion. The judge stated from the bench, "I'm going to let them try to figure it

_____

[2] June 1, 2021 hearing at 11:02:33.

out, I'm not going to get into changing that schedule,"[3] and "I try to avoid modifying these agreements."[4]  The judge overruled Dylan's motion for the child to attend school in Laurel County.  The family court's rulings are documented on a standard docket sheet.

At the conclusion of the hearing, the judge directed counsel to prepare an order based on his oral statements.  Ashley's counsel promised to do so and send it to Dylan's counsel for review.  The family court's statements at the end of the hearing apparently confused Dylan, and he believed the family court was not issuing a final order regarding modification of the parties' timesharing.  Dylan believed the family court wanted the parties to attempt to come to an agreement before issuing a final order.  Therefore, on June 14, 2021, Dylan filed another motion to establish parenting time while L.B.W. attends school.  This motion crossed in the mail with the tendered order about the June 1 hearing, which the family court did not sign or enter.

On July 12, 2021, the family court heard Dylan's next motion.  Dylan's counsel requested an evidentiary hearing, but the judge replied that he already had a hearing regarding this issue and was not inclined to have another.  The family court stated he would consider this motion as a motion to alter, amend,

---

[3] June 1, 2021 hearing at 11:35:20.

[4] June 1, 2021 hearing at 11:36:26.

or vacate, and both parties should submit proposed orders. On September 16, 2021, the court issued an order overruling Dylan's motion.

On September 20, 2021, Dylan filed a motion to vacate the September 16 order, perhaps unaware that repeated reconsideration motions are not allowed. But on this same date, Dylan filed yet another motion to expand or create a workable visitation schedule. On September 29, 2021, the family court issued orders overruling both motions. On October 7, 2021, the family court entered a written order which memorialized the orders from the June 1 hearing. This appeal and cross-appeal followed.

## STANDARD OF REVIEW

A trial court's determinations as to timesharing are reviewed for abuse of discretion. *Drury v. Drury*, 32 S.W.3d 521, 525 (Ky. App. 2000). "The test is not whether we as an appellate court would have decided the matter differently, but whether the trial court's rulings were clearly erroneous or constituted an abuse of discretion." *Moore v. Moore*, 626 S.W.3d 535, 539 (Ky. 2021). "The test for abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair or unsupported by sound legal principles." *Woodard v. Commonwealth*, 147 S.W.3d 63, 67 (Ky. 2004). A finding of fact is clearly erroneous if not supported by substantial evidence, which is evidence sufficient to induce conviction in the mind of a reasonable person. *Moore v. Asente*, 110

S.W.3d 336, 354 (Ky. 2003). We review a family court's legal conclusions under the *de novo* standard. *Brewick v. Brewick*, 121 S.W.3d 524, 526 (Ky. App. 2003).

An unpreserved issue may only be reviewed on appeal for "palpable error which affects the substantial rights of a party[,]" and relief may only be granted "upon a determination that manifest injustice has resulted from the error." CR 61.02. To qualify as palpable error, an error "must be easily perceptible, plain, obvious and readily noticeable." *Nami Resources Company, L.L.C. v. Asher Land and Mineral Ltd.*, 554 S.W.3d 323, 338 (Ky. 2018). "Implicit in the concept of palpable error correction is that the error is so obvious that the trial court was remiss in failing to act upon it *sua sponte*." *Lamb v. Commonwealth*, 510 S.W.3d 316, 325 (Ky. 2017). "In order for an error to be palpable, the error must be so egregious as to be shocking or jurisprudentially intolerable." *McCloud v. Commonwealth*, 286 S.W.3d 780, 788-89 (Ky. 2009) (internal quotation marks citations omitted).

## ANALYSIS

Dylan contends the family court erred in not granting him a further evidentiary hearing regarding his motion to modify timesharing after his attempt to modify school placement was rejected. Further, he claims the family court could not make sufficient findings of fact pursuant to CR 52.01 regarding the minor child's best interest about timesharing without another hearing.

While the terms "custody" and "timesharing" are often used interchangeably, they are distinct legal concepts. Custody is a parent's responsibility and authority over their child, while timesharing regards how much time a parent spends with their child. *Pennington v. Marcum*, 266 S.W.3d 759, 764-67 (Ky. 2008). Dylan is only seeking to modify timesharing in this action, not change the nature of the parties' custody, which is joint custody.

A motion to modify timesharing is governed by KRS[5] 403.320(3). *Id.* at 765. This statute states: "The court may modify an order granting or denying visitation rights whenever modification would serve the best interests of the child; but the court shall not restrict a parent's visitation rights unless it finds that the visitation would endanger seriously the child's physical, mental, moral, or emotional health." When determining modification of timesharing, only the best interests of the child need to be considered. *Pennington*, 266 S.W.3d at 770. "There are several factors courts must consider in determining whether a modification of timesharing is in a child's best interest, which are partially listed in KRS 403.270." *Childress v. Hart*, 592 S.W.3d 314, 317 (Ky. App. 2019). The basis for a modification decision is thus fact-driven rather than law-driven, because the legal standard is whether the modification is in the best interests of the child. *Anderson v. Johnson*, 350 S.W.3d 453, 455 (Ky. 2011).

---

[5] Kentucky Revised Statutes.

-11-

Precedent dictates that KRS 403.320 entitles a parent to a hearing on visitation, and the modification provision of this statute includes that requirement of a hearing to determine the child's best interests. *McNeeley v. McNeeley*, 45 S.W.3d 876, 877 (Ky. App. 2001). Further, it is clear a trial court is required to make specific findings of fact that support its ruling that an action is or is not in the best interest of a child in a modification hearing. *Anderson*, 350 S.W.3d at 459.

Dylan contends that the family court failed to grant him a hearing on his specific modification motion. Ashley claims Dylan did have an opportunity to be heard at the June 1, 2021, hearing. Dylan claims the family court did not hear any evidence regarding his motion to increase his timesharing at the June 1 hearing.

Our analysis then must answer two questions. First, was there a hearing on timesharing? Second, was the hearing adequate to allow the family court to decide based on the child's best interests?

We conclude an evidentiary hearing relating to Dylan's timesharing request did take place. Several motions were set to be heard on the June 1 hearing date, including Dylan's motion for the child to attend school in Laurel County. At the beginning of the hearing the judge notes there was an agreement in place and

"somebody wants to change that agreement." [6] Dylan's counsel indicated that is what he wanted.

Consideration of the motion heard on June 1 necessarily involved timesharing. Ashley had filed a competing motion to modify the timesharing agreement (with a specific request regarding the Easter holiday), and a motion to allow for third parties to assist in transportation and exchanges of the child. All these motions were heard at the June 1 hearing. During the hearing, Dylan's counsel asked him, "If the Court will give you more visitation, do you want it?" To which Dylan responds: "Absolutely, I do want it."[7]

While Dylan had not filed a specific motion to modify timesharing at this point, Ashley had. And Dylan made a motion to change schools which could include any related timesharing adjustments. Dylan knew that a modification hearing would be taking place on June 1. Dylan was defending such a motion as well as essentially making such a motion, and the evidence presented on June 1 would address the issue one way or the other. Further, Dylan's counsel made a statement during the hearing that the child could easily go to school in Laurel County without Ashley having to quit her job if Dylan had the child during the

---

[6] June 1, 2021 hearing at 10:13:56.

[7] June 1, 2021 hearing at 11:08:59.

week.  This is evidence that Dylan and his counsel were arguing a modification motion.  We conclude Dylan did receive a hearing.

The second question is more difficult.  The family court granted the parties a one-hour hearing.  Dylan contends this was not a reasonable time for the family court to hear adequate testimony to determine the child's best interests.

> The trial court is vested with a large discretion in the conduct of the trial of causes and an appellate court will not interpose to control the exercise of such discretion by a court of original jurisdiction, unless there has been an abuse or a most unwise exercise thereof.  In exercising that discretion, a trial court clearly has the power to impose reasonable time limits on the trial of both civil and criminal cases . . . .  As long as these trial time limits are not arbitrary or unreasonable we will not disturb the court's decision on review.  The trial court also has discretion to . . . control . . . the amount of evidence produced on a particular point.

*Addison v. Addison*, 463 S.W.3d 755, 762 (Ky. 2015) (internal quotation marks and citations omitted).

We must keep in mind the realities of family court dockets.  As the family court judge noted here and the record confirms, these parties had been on the court's docket several times.  The judge explained the temptation to grant the transfer motion because "I've got five thousand others to hear" – an exaggeration to make a point.[8]  Our family courts cannot have a hearing to adjust timesharing

---

[8] June 1, 2021 hearing at 10:21:24.

-14-

every other week in any given case. The history of the case, including information from prior hearings, may properly dictate how much time the family court allows on a given motion as well as how soon the court will substantively revisit the issue. The family court here was already familiar with the timesharing disputes of these parties. As we will see, Dylan had sufficient time to make his arguments about timesharing at the June 1 hearing.

Each party had motions to present on this date, and each party was initially given approximately 25 minutes to present their evidence. The judge granted some additional time to each side. The entire hearing, including the court's rulings, lasted about an hour and a half. While this does at first glance appear to be a short amount of time for multiple motions, both parties were aware of the time limit over two months in advance, and there is no evidence in the record that anyone made any objections to the time limit.

Dylan never made any proffer as to what evidence would have been presented had he been given the opportunity to present additional evidence. The family court heard and acknowledged Dylan's testimony and evidence of his strong bond with his son. Dylan also was able to present his expert witness about the schools. His counsel even suggested during the hearing an adjustment to the timesharing depending on the choice of school.

Dylan further contends the family court failed to make the requisite findings of fact regarding L.B.W.'s best interests. The family court did not make contemporaneous written findings but eventually explained its decision in its September 16, 2021, order, which states: "The child's best interests are served by keeping the parenting time schedule as is; the child has become accustomed to this schedule over the past four (4) years."[9] We do not find this to be an abuse of discretion in the circumstances of this case.

Dylan argues it was error to find his June 14, 2021, motion barred by *res judicata* and collateral estoppel. While we find his argument on this point to be technically correct, it does not affect the outcome. Visitation can be modified upon proper showing, *at any time*, having no two-year restriction pursuant to KRS 403.320. *Pennington*, 266 S.W.3d at 767 (emphasis added). But this does not mean the family court was compelled to have another evidentiary hearing so close in time to a prior hearing addressing the same subject.

The family court acknowledged that it had the ability to reopen the modification issue at any time. At the conclusion of the September 27, 2021, motion hour, the family court judge stated: "When we get closer to summer, if you

---

[9] Order Overruling Petitioner's Motion to Alter, Amend, or Vacate; dated September 16, 2021, Page 1.

-16-

want to file a motion to modify the summer schedule, I can entertain that."[10] The family court simply declined to change his order from a few months prior. The family court found the schedule the parties had previously agreed to, an Agreement which Dylan's counsel drafted, to be in the best interests of the child.

When this case returns to the family court, L.B.W. will have been in school for over a year. L.B.W.'s schedule is what will be of primary importance. Again, this is all about what is in the child's best interest, not a competition over how much time the parents get. The parties may be able to reach a new agreement to consider the fact L.B.W. is growing up, going to school, developing his own interests, and involved in choosing his activities. If not, it may well be time for the family court to have the next hearing which it invited the parties to seek. Indeed, the record of the Laurel Circuit Clerk indicates Dylan has not waited for the finality of this appeal to file another timesharing motion. By the time this Opinion is rendered, the past year of school and the beginning of any summer break will help inform both parents and the family court, if necessary, on what is best for L.B.W.

Ashley contends in her cross-appeal that the family court erred in its order finding her in contempt for violating the parties' Agreement to alternate claiming the child as a dependent on their tax returns and subsequently for

---

[10] September 27, 2021, hearing at 10:23:21.

allowing Dylan to claim the child for the next five (5) years.  It is questionable whether the family court found Ashley in contempt as is indicated by the lack of willfulness by Ashley the family court noted.  This would appear to be an adjustment to even out the terms of the Agreement more than a contempt sanction.  Ashley acknowledges this error was not preserved but argues we should review the family court's order for palpable error pursuant to CR 61.02.  Ashley claims a manifest injustice occurred because the family court violated the Supremacy Clause of our federal constitution as well as Kentucky precedent.  We disagree.

The type of harm Ashley claims because of the family court's order does not rise to the level of manifest injustice.  Ashley argues she should be able to claim the minor child as a dependent on taxes every year because she has the child more than 50% of the time.  While that may be true pursuant to the Internal Revenue Code, the family court was merely enforcing an agreement she willingly made.

Ashley relies on *Adams-Smyrichinsky v. Smyrichinsky*, 467 S.W.3d 767 (Ky. 2015), which states the trial court is required to recite reasons why an award of the dependent child tax exemption to the party who would not be entitled to it under the Internal Revenue Code would serve as a support benefitting the child.  However, *Smyrichinsky* deals with a trial court modifying an award of the exemption.  The Court in *Smyrichinsky* specifically states, "Whether parties can

-18-

agree to a particular treatment of the dependent-child tax exemption is not before the Court." *Id.* at 784. In this case, the parties agreed to alternate who claimed the child as a dependent, and the family court was making Dylan whole after Ashley violated that Agreement. This Court in *Hillard v. Keating*, 546 S.W.3d 569 (Ky. App. 2018) enforced the parties' agreement which gave the ex-husband the ability to claim the two youngest children when a modification request was made.

Given that the agreement to alternate the tax exemption of the minor child was agreed to by both parties in negotiation of their Agreement, we do not agree the family court's order enforcing such Agreement amounts to an abuse of discretion, much less palpable error. No manifest injustice has resulted from the family court order to make Dylan whole after Ashley's violation of their Agreement.

## CONCLUSION

The Laurel Family Court acted within its discretion and committed no error of law. The Laurel Family Court is AFFIRMED on both appeals.

ALL CONCUR.

BRIEFS FOR APPELLANT:                    BRIEF FOR APPELLEE:

David Howard                             Kelly Kirby Ridings
London, Kentucky                         London, Kentucky