RENDERED: APRIL 17, 2026; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2025-CA-0284-MR

THOMAS CARPENTER                                      APPELLANT

|  |  |  |
|---|---|---|
| v. | APPEAL FROM JEFFERSON FAMILY COURT<br>HONORABLE SHELLEY M. SANTRY, JUDGE<br>ACTION NO. 18-CI-502024 | |

KELLY NAISER                                          APPELLEE

OPINION
VACATING AND REMANDING

** ** ** ** **

BEFORE: THOMPSON, CHIEF JUDGE; CETRULO AND KAREM, JUDGES.

CETRULO, JUDGE: Thomas Carpenter ("Father") appeals the February 1, 2025 Jefferson Family Court order suspending supervised visitation with his children. Father argues that the family court erred in modifying an agreed order without conducting a hearing or making findings of fact. Upon careful review, we hold that the family court's order must be vacated and remand for further proceedings.

## FACTS & PROCEDURAL BACKGROUND

Father and Kelly Naiser ("Mother") married in January 2010 and are the biological parents of three children. In July 2018, Mother petitioned for divorce, and a decree of dissolution was entered in September 2018. The decree incorporated the parties' marital settlement agreement, which provided for joint legal custody of the children and delineated a parenting time schedule for Father.

A little over a year later, disputes resumed between Mother and Father over various issues concerning the children. The family court appointed a guardian *ad litem* ("GAL") for the children and ordered Mother and Father to participate in mediation. In February 2020, following a successful mediation, Mother and Father reached an agreement wherein the parties retained joint legal custody but modified their parenting time schedules to follow a "week-on/week-off" model, with each parent having an overnight with the children during his or her respective "off" week. This arrangement remained in place without either parent seeking a court resolution for approximately the next four years.

Following a physical altercation between Father and the oldest child in May 2024, Mother obtained an emergency protective order ("EPO") for herself and the children. In June 2024, Mother filed a motion with the family court seeking to suspend or modify Father's parenting time. The family court appointed a friend of court ("FOC") to investigate the domestic violence allegation and issue

a report and recommendations regarding custody, parenting time, and visitation. The court passed Mother's motion to modify parenting time to its domestic violence docket on August 13, 2024.[1]

In July 2024, Father also filed a motion to modify custody, expressing concerns over Mother's mental health and her unilateral decision to enroll the children in therapy with a particular counselor. Father attached several affidavits in support of his motion and tendered a proposed court order removing the current therapist, appointing a new therapist, and ordering a custodial evaluation. By its own order, the family court passed Father's motion to be heard with Mother's motion on its August 13, 2024, docket.

Based on the appellate record and briefing before us, it does not appear that either of the parties' motions were heard on August 13. In lieu of any hearing, the family court entered an agreed order ("Agreed Order"), tendered and signed by the parties, their respective counsel, and the GAL on August 16, 2024. The relevant portions of the Agreed Order are as follows:

> 1. [Father] shall enter into a No Unlawful Contact Order.
>
> . . .
>
> 3. [Father] shall remain in counseling and follow all recommendations regarding his individual counseling treatment.

---

[1] The record of the domestic violence action is not before us.

4. [Father] shall attend and complete group therapy . . . as recommended by the Friend of Court.

5. The children and [Father] shall attend family therapy with Michael RoBards. . . .

6. The children and [Father] shall have supervised parenting time . . . .

. . . .

9. The parties agree that once the services are in place, they shall attend an in-person mediation . . . to discuss modifying the parenting schedule and lifting the supervision requirement. Further, the parties will address treatment providers at mediation.

10. [Mother] shall dismiss the Petition for Emergency Protective Order.

11. The August 13, 2024[,] hearing is remanded.

. . . .

SO ORDERED.

A month later, after this Agreed Order was filed, Father filed a motion to compel his visitation, stating that he had not received any supervised parenting time as provided for in the Agreed Order. Father reported that he attempted to participate in family therapy with Mr. RoBards; however, further engagement in family therapy was postponed, which Father alleged was based on the FOC's advice. Father argued the Agreed Order did not place any contingencies on his supervised visits, and to the best of his ability, he complied with its terms.

-4-

Moreover, other services had been implemented, and mediation was scheduled for January 2025, the earliest available date.

On September 23, 2024, Father's motion to compel came before the family court. A recording from that motion hour is not included in the record on appeal. Nonetheless, the family court entered a subsequent order remanding Father's motion to compel upon agreement by the parties and scheduling a "check in" date for December 2, 2024.

The month of December commenced with a flurry of filings in the matter. Father's counsel, who had represented him in connection with the Agreed Order and motion to compel, moved to withdraw from representation on December 2. Father's newly retained attorney entered her appearance the same day on December 2. The family court continued the December 2 "check in" date to December 9. On December 3, Mother filed a series of verified motions to be heard at the continued court date, including a motion for reimbursement of children-related expenses, a motion to designate the children's therapist, and a motion to restrict Father's contact with the children to a supervised, therapeutic setting.

The dispute over the existence of contingencies among the provisions in the Agreed Order arose again with Mother's motion to restrict Father's contact. Specifically, Mother reported that Father and the children were scheduled for

family therapy with Mr. RoBards in October 2024, but neither that session nor any subsequent session occurred due to Mr. RoBards's concern that Father required more intensive individual therapy before family therapy could proceed. Mother acknowledged that Paragraph Six of the Agreed Order stated Father "shall have supervised parenting time" with the children under the supervision of an agreed upon provider. However, Mother contended that the supervised visits were contingent on making headway in family therapy. Mother then accused Father of sending unmonitored cards and text messages directly to the children and requested the family court enter an order prohibiting direct contact and requiring all communication to occur in a therapeutic setting as approved by the mental health providers.

These various motions came before the family court during its motion hour on December 9. The family court heard arguments from the parties' counsel, GAL, and FOC; no sworn testimony was taken. The proceeding began with Mother's counsel recounting the events leading up to and following entry of the Agreed Order and summarizing Mother's pending motions before the court. Regarding Mother's motion to restrict Father's contact, counsel observed that the case was in "a very weird limbo place" as Father's supervised visitation was effectively forestalled due to Mr. RoBards's decision to halt family therapy. Counsel urged the family court to restrict any direct contact or communication

-6-

between Father and the children, unless approved and supervised by the associated therapists, until the standstill subsided.

Father's counsel acknowledged that she was "brand new" to the case, and thus, was not involved when the Agreed Order was signed and entered. Nevertheless, she relied on a plain reading of the Agreed Order to argue that Father's entitlement to supervised visitation was without any contingencies.

The GAL, a signatory to the Agreed Order, argued that "[t]he spirit of [the Agreed Order], if not artfully drafted," was for the children and Father to attend family therapy with Mr. RoBards, and *then* begin supervised visits. The GAL asserted the two provisions were not intended to occur simultaneously. After the GAL joined in support of restricting Father's contact to the therapeutic setting, Father's counsel interjected, again referring to the Agreed Order and arguing that "it reads, we're gonna do this, this, this, and this. Not one thing's contingent on the other." The family court then inquired of Mother's counsel, the GAL, and the FOC whether the intent behind the agreement was "therapeutic contact." All three representatives answered in the affirmative. The FOC further stated that it was Mr. RoBards's decision, made without interference from third parties, to pause family

therapy. The family court indicated that it would issue an order and get the case on track to proceed to mediation in January.[2]

On December 18, 2024, the family court entered its written order ("December Order"), ordering in part "that the children and [Father] shall attend family therapy with Michael Robards [*sic*]" and "[t]hat [Father] shall only have contact with his children in a therapeutic setting with Michael Robards [*sic*] or in a supervised parenting time session . . . ."

Mother timely filed a Kentucky Rule of Civil Procedure ("CR") 59.05 motion to alter, amend, or vacate the order, arguing that, in addition to several clerical errors, the order did not accurately reflect the situation as discussed on December 9, 2024. Mother took issue with the court's wording that Father's contact with the children was limited to family therapy sessions *or* supervised parenting time. To the contrary, Mother reiterated her position, also endorsed by the GAL and FOC, that the visits were predicated on family therapy. Given that Mr. RoBards suspended family therapy, Mother argued the order improperly suggested that Father's supervised visits could still occur. Finally, Mother requested the court to amend its order to prohibit Father's direct contact with the children until recommended by mental health professionals.

---

[2] From the record before us, it does not appear that the agreed-upon mediation occurred in January 2025.

The family court heard Mother's CR 59.05 motion on January 27, 2025. Again, Mother and Father were represented by their respective counsel, and the GAL and FOC were present. Mother's counsel restated the arguments in the CR 59.05 motion. The court inquired whether Father's counsel had any objections. Father's counsel repeated her impression that the Agreed Order granted Father supervised visitation and advised that Father and Mr. RoBards had "reconnected" after the last court date. Counsel continued, "[B]efore we have an order that says that he does not get supervised visits, I would like to touch base with Mr. RoBards to see where he is on getting the kids back in. Because if the kids are having sessions with [Father], then the parties need to follow the . . . Agreed Order and he needs to have his supervised visits. So, that's my only issue is that things have changed in the therapy landscape since we were here on December the 9th." The court took the matter under advisement, stating that the concerns of Father's counsel were noted.

On February 1, 2025, the family court issued a written order ("February Order") granting Mother's CR 59.05 motion. In a few words, the court ordered "that supervised visitation is suspended until reunification therapy can progress." As to Father's contact with the children, the court ordered "that [Father]'s contact with the children shall be restricted to therapeutic only. [Father] shall not directly contact the children until recommended by the mental health

-9-

professionals involved or further Order of this Court." It is from this order that Father appeals.

## ANALYSIS

Of the several issues raised by Father on appeal, we address only the family court's failure to make statutorily mandated findings.[3]

### A. Standard of Review

"Under the established standard of review, we will 'only reverse a trial court's determinations as to visitation if they constitute a manifest abuse of discretion, or were clearly erroneous in light of the facts and circumstances of the case.'" *Moore v. Moore*, 626 S.W.3d 535, 539 (Ky. 2021) (quoting *Drury v. Drury*, 32 S.W.3d 521, 525 (Ky. App. 2000)). "The test for abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Id.* (citing *Goodyear Tire & Rubber Co. v. Thompson*, 11 S.W.3d 575, 581 (Ky. 2000)).

We review a family court's factual findings under the clearly erroneous standard, giving due regard to the court's unique opportunity to assess

---

[3] Father argues that the family court erred by restricting his right to visitation and violating his due process rights; by hearing parol evidence without first determining the presence of an ambiguity in the Agreed Order; and by failing to make findings of fact. We disagree that these issues were adequately raised and/or ruled on by the family court. To wit, there is no record of the court's rulings on several disputed matters, such as inadequate notice, denial of cross examination, or the admission of improper hearsay evidence. As to the final contention, preservation failures do not negate a trial court's duty to make required statutory findings. *Keifer v. Keifer*, 354 S.W.3d 123, 125-26 (Ky. 2011).

witness credibility and weigh the evidence. *Turner v. Turner*, 672 S.W.3d 43, 54 (Ky. App. 2023) (citations omitted). "A finding of fact is clearly erroneous if it is not supported by substantial evidence. '[S]ubstantial evidence' is evidence that when 'taken alone or in the light of all the evidence . . . has sufficient probative value to induce conviction in the mind of [a] reasonable [person].'" *Cabinet for Health & Fam. Servs. v. K.O.*, 721 S.W.3d 124, 130 (Ky. 2025) (alterations in original) (quoting *Moore v. Asente*, 110 S.W.3d 336, 354 (Ky. 2003)).

Lastly, we review a lower court's interpretation and application of relevant statutory provisions *de novo*. *Turner*, 672 S.W.3d at 50 (citing *Adamson v. Adamson*, 635 S.W.3d 72, 77 (Ky. 2021)).

### B. <u>The Family Court Did Not Make Findings of Fact Nor Conclusions of Law</u>

At the outset, we feel compelled to revisit our Supreme Court's holding in *Anderson v. Johnson*, "that in domestic relations cases, post-decree motions concerning visitation and timesharing modifications are 'actions tried upon the facts without a jury,' . . . which require specific findings of fact and separate conclusions of law, followed by an appropriate judgment." 350 S.W.3d 453, 454 (Ky. 2011) (quoting CR 52.01). The applicable statute in this case is Kentucky Revised Statute ("KRS") 403.320(3), which "governs the modification

of visitation."[4]  *Layman v. Bohanon*, 599 S.W.3d 423, 429 (Ky. 2020).  That statute provides that "[t]he court may modify an order granting or denying visitation rights whenever modification would serve the best interests of the child; but the court shall not restrict a parent's visitation rights unless it finds that the visitation would endanger seriously the child's physical, mental, moral, or emotional health."  KRS 403.320(3).  Our Supreme Court clarified that the correct application of KRS 403.320(3) permits a family court to modify a visitation arrangement if it *first* finds that doing so is in the children's best interests.  Furthermore, in the event a family court restricts visitation, it must "*first* [find] that the children's physical, mental, moral or emotional health was seriously endangered."  *Layman*, 599 S.W.3d at 431 (emphasis added).  These findings and conclusions cannot be presumed or inferred. *See Turner*, 672 S.W.3d at 56; CR 52.01 (requiring specific facts to support conclusions of law).  *See also McNeeley v. McNeeley*, 45 S.W.3d 876, 879 (Ky. App. 2001) ("It is not for us to decide on appeal whether visitation should be denied.  That task is properly for the trial court.").  In the matter before us, the family court did not satisfy the requirements of either KRS 403.320(3) or CR 52.01.

---

[4] Mother asserts on appeal that the family court was not "modifying" the Agreed Order, but simply "clarifying" the terms.  While this might have been true at the first court appearance, each successive appearance resulted in further modifications.  Ultimately, the February 2025 Order imposed a complete restriction of visitation by Father, without any sworn testimony or evidentiary hearing, and without any findings required by KRS 403.320.

The Agreed Order provided terms regarding Father's visitation.  The December Order explicitly limited Father's contact to a therapeutic or supervised setting.  The February Order, however, contained significant deviations or alterations from both the Agreed and December Orders, and applied further restrictions on Father's visitation and contact with his children.  As the family court did not make express findings consistent with KRS 403.320 and pursuant to CR 52.01, we must remand.  *See Anderson*, 350 S.W.3d at 454; *Keifer*, 354 S.W.3d at 125; *Turner*, 672 S.W.3d at 55; *Miranda v. Miranda*, 536 S.W.3d 196, 200-01 (Ky. App. 2017); *McNeeley*, 45 S.W.3d at 877-78.

## CONCLUSION

For the foregoing reasons, we VACATE the Jefferson Family Court's February Order modifying Father's visitation and contact with his children and REMAND for further proceedings and findings pursuant to KRS 403.320.


ALL CONCUR.


BRIEFS FOR APPELLANT:

Justin T. Brezosky
Zachary G. Ousley
Louisville, Kentucky

BRIEF FOR APPELLEE:

J. Gregory Troutman
Ashley Ahrens
Louisville, Kentucky